[No. 410. Decided August 31, 1892.]

JOHN DOYLE, *et. al.*, *Respondents*, v. ALEX. McLEOD, *et. al.*,
*Appellants.*

APPEAL—STATEMENT OF FACTS—CERTIFICATE—LIEN ON LOGS—DESCRIP-
TION IN LIEN NOTICE.

Parties to a suit which has been decided as to them, and their
claims paid, are not parties to a judgment subsequently rendered,
and it is not necessary for them to join in or be served with notice of
appeal.

Where the certificate of the judge to the statement of facts certi-
fies that regular notice had been given of the settlement at a certain
time and place, and that such settlement had been adjourned to an-
other day and place, the fact that settlement was adjourned by order
of the court is *prima facie* established, although the order does not ap-
pear in the record.

The fact that the court or the opposing party may suggest, and
there be incorporated in the statement additional matter not included
in the proposed statement on file at the time notice of settlement is
given, can in no manner invalidate the settlement.

On appeal in an equity case it is sufficient for the judge to certify
that the statement contains all the material facts, including all ex-
hibits in the care; and it is not necessary that the certificate should
state that the statement contains all the testimony on which the
cause was tried, together with all objections or exceptions taken to
the reception or rejection of testimony.

A lien notice is sufficient which describes the property on which
a lien is claimed as "a lot of saw logs being about one million, one
hundred and ten thousand feet in quantity   .   .   .   marked thus,
K. 33, about one hundred and fifty-three thousand feet of which are
in the possession of the Hart Mill Company of Seattle, Washington,
and the remainder of which are now lying in the water in the bay at
Shelton, Washington."

Where the contract for stumpage provided that payment should
be made for each 1,000 feet of logs cut, a claim of lien cannot be main-
tained for stumpage on the whole number of logs against a party who
is in possession of a part only of the entire cutting.

A claim of lien upon a certain lot of saw logs, described as "be-
ing one million, six hundred and twenty-five thousand feet in quan-
tity   .   .   .   being marked thus, K. 30, and a part of which are
loose in the water, and a part made up in rafts, one raft of which is

now in the possession of the Hart Mill Company of Seattle, Washington, and the remainder are now lying in the water in the bay at Shelton, Washington," is insufficient, the description being too indefinite for identification.

*Appeal from Superior Court, Mason County.*

Action by John Doyle and fifty-three others to foreclose their respective liens upon a large quantity of logs lying in the waters of Puget Sound at Shelton, Washington. The defendants were Alex. McLeod, for whom the logs were cut; the Satsop Railroad Company, purchaser of the logs in trust; the bank of Shelton, holding a mortgage on the logs; W. H. Kneeland, who claimed a lien upon the logs for stumpage, and the Mason County Central Railroad Company, which also claimed a lien. The court by decree of July 16, 1891, settled all the conflicting claims involved in this controversy, including each and every plaintiff's claim and all of the defendants' claims except those of the Mason County Central Railroad Company and W. H. Kneeland, which were not passed upon until decree of the court rendered October 6, 1891. In the meantime the claims of the railroad company and of Kneeland had been sold to Allen C. Mason, who was substituted a party defendant. The decree of October 6, 1891, gave said defendants judgment on their lien claims against the fund, which had been paid into court by the Satsop Railroad Company, whom the Washington Southern Railroad Company had now succeeded in interest. From such decree the Washington Southern Railroad Company appeals.

*J. E. Sligh,* and *Allen, Ayer & Franklin,* for appellant.

*James Wickersham* and *H. S. Tremper,* for respondent.

The opinion of the court was delivered by

HOYT, J.—Respondent moves to dismiss the appeal herein on two grounds—(1) That the appellant is neither

aggrieved by, nor interested by, the judgment appealed from; (2) that the proper parties have neither joined nor been served in appeal. As to the first ground, respondent makes no argument, excepting that there may be gathered in a vague way from his brief that he claims that the Washington Southern Railroad Company had never been properly substituted for the Satsop Railroad Company as defendant in the action. We think the record shows that such substitution had been made, and that if it had not, that the Satsop Railroad Company must be held to have been the party which appealed, instead of the Washington Southern Railroad Company.

As to the second point, the record shows that at the time of the rendition of the judgment, notice of appeal was given in open court. Under our statute this is sufficient notice to all persons properly parties to the appeal. The argument of the respondent is, that in this case such a notice could not affect the fifty-three original plaintiffs, for the reason that the suit as to them had been long before decided, and their claims paid. His contention in this regard is doubtless true, but the same argument establishes the fact that these original plaintiffs were no longer interested in any manner in the result of the action, and were not in any proper sense parties to the judgment, at that time rendered, and therefore were not necessary parties to the appeal. The motion to dismiss the appeal must, therefore, be denied.

Respondent also moves to strike the statement of facts on various grounds set out in his motion. The two principal ones being—(1) That no notice of the settlement thereof was given as required by statute; and (2) that matter, not included in the proposed statement on file at the time the notice of settlement was given, had been included in the statement as settled. It is not contended but that regular notice of the settlement of the statement at the city of

Montesano, on the 20th day of November, was given, but it is claimed that there was no proper adjournment of such settlement from that time until the time when it was actually settled in the city of Olympia. The judge, in his certificate, however, certifies that regular notice had been given of the settlement on the day named, at Montesano, and that such settlement had been by him adjourned from time to time until the day when it was finally settled in the city of Olympia, as above stated. We think such certificate establishes, *prima facie* at least, the fact that the settlement was adjourned by order of the court, as required by the statute. It is argued by respondent that no such order appears in the record. If this were true it could not prove anything as against the recitals of the judge in said certificate. In the absence of any such recitals, the fact that no order of adjournment appeared in the record might be sufficient to show want of jurisdiction, but the presence of such recitals show that in fact the order of adjournment was made. And if such order is not found in the transcript it is *prima facie* the fault of the clerk, or parties, in not having the proper entry of the order made. The order, however, is that which adjourns the hearing upon the settlement, and not the entry thereof. Besides, there has been an additional transcript filed, which supplies the defect in said record as to the entry of said order.

On the other ground the rule should be that the statement placed on file as a foundation for the proceeding for the settlement of the facts in the action should be so far complete as to give evidence of a *bona fide* effort on the part of the moving party to present a statement which completely embodies the facts material to the appeal. When this is done, the foundation for jurisdiction in this regard is complete, and the fact that the court or the other party may suggest, and there be incorporated in the statement, additional facts, can in no manner affect the settle-

ment. Apply this rule to the case at bar, and we think the proposed statement conferred jurisdiction. In fact, we are of the opinion that all the matters added to said proposed statement, and settled as part of the facts on appeal, were absolutely irrelevant thereto, and the fact that the court saw fit to include them in said statement could in no manner affect the rights of the moving party.

Respondent also moves to strike the statement, upon the ground that the certificate of the judge is insufficient. The judge certifies that the statement contains all the material facts, including all exhibits in the case, but does not certify that the same contains all the testimony on which the cause was tried, together with all objections or exceptions taken to the reception or rejection of testimony. It is claimed that the omission to certify as to this latter fact renders the certificate insufficient. This court has used language in some of its opinions which would, perhaps, warrant this contention on the part of the respondent, but as we are now advised, it has never decided the precise question here presented. The statute provides that it shall be sufficient if the judge certifies that the statement contains all the material facts. It then goes on to provide that in a law case, the statement need contain no more than was formerly necessary in a bill of exceptions, but that in an equity case, tried upon its merits, it should contain all the testimony upon which the cause was tried, together with any objections or exceptions to the reception or rejection of testimony. It is the duty of the court to construe this whole section together, and thus construed, we are of the opinion that in any case, whether at law or in equity, the certificate of the judge that the statement contains all the material facts is, *prima facie*, sufficient to give this court jurisdiction. If, however, upon an examination of the transcript itself, this court finds that in a suit in equity the testimony upon which the cause was tried, together with the objections

and exceptions relating thereto, have not been included in the statement, the *prima facie* presumption of jurisdiction will be destroyed, and it would be unable to hear and determine the action. It is the plain intent of said section that in a law case a single question may be brought to this court for review and if so much is brought here as a statement of facts as would have been a sufficient bill of exceptions under the old rule to require this court to pass upon such single question, then the judge could properly certify that all the material facts were embodied in the statement. It is equally clear that in an equity case, tried upon its merits, the case can only be brought here as a whole, and this court, before it can proceed at all in an appeal in such a case, must be fully placed in possession of the entire case as it was presented to the court below. In other words, the material facts which must be contained in the statement are the facts material to the appeal, and such words have no reference whatever to facts in the case as presented to the trial court. The difference in the requirement of what must be contained in the statement in a law case and in an equity case grows entirely out of the different relation which this court bears to suits at law and in equity. In the one, as we have seen, it may review any single question which either of the parties see fit to bring here for that purpose; in the other it tries the case *de novo* upon the same evidence and facts that it was tried upon in the court below. We think this certificate was sufficient. The motion to strike the statement must be denied.

The only controversy upon the merits is as to the lien claims originally filed on behalf of W. H. Kneeland as to a portion of the logs in controversy, and of the Mason County Central Railroad Company as to another portion, both of which claims have been assigned to and are now held by Allen C. Mason, the respondent here. The appellant purchased the logs of the person against whom said lien claims were

47—4 wash.

originally filed.   It had no contract relation with either of said lien claimants, and can only be held liable by force of the statute relating to liens.   Each of the liens was filed for sums alleged to be due for stumpage for logs cut upon the premises of the respective claimants.   The court below held the appellant, as the purchaser of a portion of the logs for which the stumpage was claimed, liable for the entire amount due the respective claimants for such stumpage, and rendered judgment accordingly, from which judgment this appeal was taken.   The appellant urges two reasons why such judgment cannot be sustained: First, that the claims of lien filed by the respective parties are each insufficient and absolutely void so far as said appellant is concerned; and second, that even if said lien claims are sufficient, the appellant under the circumstances of this case could only be held for the stumpage upon that particular amount of logs which had come into its possession. The two lien claims are not identical, and we shall have to discuss them separately.   That part of the lien notice filed by W. H. Kneeland which is material for the purposes of the discussion is as follows:

" W. H. Kneeland, of Mason county, State of Washington, claims a lien upon a lot of saw logs, being about one million one hundred and ten thousand feet in quantity, which were cut in Mason county, Washington, and are marked thus (K. 33), about one hundred and fifty-three thousand feet of which are in the possession of the Hart Mill Company, of Seattle, Washington, and the remainder of which are now lying in the water in the bay at Shelton, Washington."

Appellant contends that this description is not a sufficient compliance with the statutory provisions to give notice to anyone.   There is much force in its contention in this regard.   The description is very indefinite.   Construing it alone, it only says that a lot of saw logs, containing about one million one hundred and ten thousand feet, has

been cut and put into the water, and marked K. 33; that about one hundred and fifty-three thousand feet thereof are in the possession of the Hart Mill Company, of Seattle, Washington, and that the remainder are lying in the bay at Shelton, Washington. The word "lot" can have no application nor force in adding to the description of the logs thus divided. If it had force, as applied to the whole of the logs in question, such force was entirely destroyed when it was made to appear that a portion of said logs were in one place and the remainder in another. The only description as to the logs not included in the raft in the possession of the Hart Mill Company is that they are now lying in the water in the bay at Shelton. There is no statement that they are rafted or loose; that they are together or widely separated; and for all that appears in said notice to the contrary, they may be mixed with other logs with exactly the same mark, belonging to different parties. The description does not come up to the mark laid down by the supreme court of this territory in the case of *Wheeler v. Port Blakely Mill Company*, 2 Wash. T. 71 (8 Pac. Rep. 635). There the description set out a definite lot or parcel of logs of a certain mark. Here the description in no way imports any such definite lot or parcel, so far as the logs not included in the Hart Mill Company's boom are concerned. It is evident that the description in the notice is not what it should have been, but in consideration of the evident intention of the legislature to protect claims of this kind, and of the fact that to insure the results desired by the legislature a liberal rule must obtain as to the construction of these lien notices, we have concluded that this description may be held sufficient. The approximate amount of the logs left in the waters at Shelton may be gathered from the notice. This being so, it may be assumed that they are together, and constitute the only lot of logs marked as they are, until the contrary is

made to appear.    If, however, it should be made to appear
on the part of the defense that there were other logs with
that mark in the waters of the bay at Shelton, the suffi-
ciency of the description would be destroyed.    This being
so, we think we best subserve the object of the legislature
by holding the notice in question good, and leaving it for
the defense to establish facts, if they exist, which would
make it bad.    No hardship is inflicted upon the defense by
such course, whereas to construe these lien notices strictly,
and require them to show every fact necessary to secure
perfect identification of the subject matter of the lien,
would necessitate such notices being made exceedingly
long, and require in their preparation much technical skill.
This lien notice must be held to be sufficient.

It substantially appears upon the face of such lien that
only nine hundred and fifty-seven thousand feet of the logs
for which the lien was claimed went into the possession of
the appellant, and the proof establishes such fact beyond
question.    The court, however, held it responsible for the
stumpage on the entire one million one hundred and ten
thousand feet.    Under the circumstances of this case, as
disclosed by the evidence, this could not be done.    If we
should so construe the contract under which the logs were
cut as to warrant a lien for the whole of the logs in ques-
tion being enforced against a distinct portion thereof, it
could only be on the ground that the contract for the cut-
ting of the logs on the particular description of land men-
tioned therein was an entire one.    If we should so construe
it, we should do so in direct opposition to the testimony
on the part of the respondent, and in so doing should de-
stroy the sufficiency of said lien notice, by showing that it
does not contain a full statement of the demand together
with the amount thereof after deducting all just credits
and offsets, upon which ground said lien notice is also at-
tacked by the appellant.    We hold, however, that under

the testimony on the part of the respondent, the course of the parties had been such as to compel the court to construe the contract for the cutting of the logs to apply separately to each thousand feet. And that the claim of eight-five cents for stumpage upon each of said thousand feet thus cut could be enforced as a separate claim. The respondent has to invoke this construction in order to save the lien notice, and having done so he cannot ask that the appellant, into whose possession only a part of the logs have come, should be held liable for the stumpage on the whole. The judgment of the court as to this particular lien claim then can be sustained so far as the sum of $813.45 is concerned, together with the attorney's fee and costs as therein adjudged, but cannot be sustained as to the $130.05, the stumpage on the one hundred and fifty-three thousand feet which never came into the possession of the appellant.

The material part of the notice of the other lien is as follows:

"The Mason County Central Railroad Company . . . claims a lien upon a certain lot of saw logs described as follows: Being one million six hundred and twenty-five thousand feet in quantity, which were cut in Mason county, Washington, being marked thus, K. 30, and a part of which are loose in the water, and a part made up in rafts, one raft of which is now in the possession of the Hart Mill Company, of Seattle, Washington, and the remainder are now lying in the water in the bay at Shelton, Washington."

This description is attacked by the appellant for the same reason as was the other, and we think that such attack must prevail. We cannot conceive of any description which could be more indefinite than this. It is simply that there has been one million six hundred and twenty-five thousand feet of logs put into the water; that a certain indefinite portion thereof are in the possession of the Hart Mill Company, of Seattle, Washington, and that the remainder are in the water in the bay at Shelton, some

in rafts, and some loose.   There is no statement whatever as
to how many rafts, or what proportion of the whole amount
are in rafts, or what proportion of the whole amount are
in the possession of the Hart Mill Company, or situated in
the water at Shelton.   To hold this notice good would re-
quire a more liberal construction thereof than it is possible
to give it.   Every statement therein might be literally
true, and but a few hundred feet of the logs be in the water
at Shelton, and it might be equally true, and the entire
one million six hundred and twenty-five thousand feet with
the exception of a few hundred feet be thus situated.   Such
a description is too indefinite for identification, and public
policy does not require its being sustained, for the reason
that it is an easy matter to make such descriptions more cer-
tain and definite.   If this description had been aided by the
proofs it is possible that it could have been saved.   But
such was not the case.   It nowhere appeared from the
proofs how many of this particular lot of logs was in the
possession of the Hart Mill Company, or how many had
gone into the possession of the appellant.   Under these cir-
cumstances, even if we should hold the lien notice good,
the judgment rendered thereon could not be sustained.
There was no basis upon which the amount for which appel-
lant could be held liable could be estimated.   The undis-
puted facts showed that the entire one million six hundred
and twenty-five thousand feet had not gone into its posses-
sion.   And as we have seen in the discussion of the other
lien, it could only be held for stumpage on the logs that
came into its possession, it follows that those figures could
not be taken as a basis upon which to estimate liability, and
there are no others shown by the proofs.

The judgment against the appellant in favor of said
Mason as the successor in interest of said W. H. Kneeland
and the Mason County Central Railroad Company must be
reversed, and the cause remanded with instructions to enter

a judgment in his favor on account of the lien filed in be-
half of said W. H. Kneeland for the sum of $813.45, with
an attorney's fee of $75, and costs in the lower court so far
as they relate to said claim. The appellant will recover
its cost on appeal.

ANDERS, C. J., and DUNBAR, STILES and SCOTT, JJ., con-
cur.