[No. 26814. *En Banc.* April 4, 1938.]

THE STATE OF WASHINGTON, *on the Relation of North-east Transportation Company, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *Robert M. Jones, Judge, Respondent.*[1]

*Rummens & Griffin* and *Frank E. Hammond,* for relator.

*T. M. Royce* and *Julian Matthews,* for respondent.

MILLARD, J.—This proceeding is to review the action of the trial court in entering a judgment of dismissal upon a motion for nonsuit by defendant in the principal action.

Relator is a public service corporation engaged in carrying passengers for hire under certificate of public convenience and necessity No. 471, between a point in Seattle and east 123rd street and Sandpoint way, which is north of the city limits of Seattle.

[1] Reported in 77 P. (2d) 1012.

On January 2, 1933, the parties entered into the following contract:

"Memorandum of Agreement

"This Memorandum Witnesseth:

"That the Northeast Transportation Company has employed R. C. Johnson as Superintendent of Transportation of its operations under Certificate 471 Department of Public Works, and any extension thereof, for the period of five years from the first day of January, 1933.

"That said company agrees to pay for the services of said Johnson as Superintendent of Transportation all of the net profits arising from Passenger Service under Certificate No. 471. It being understood and agreed that:

"In calculating the net profits all expenses whatsoever incurred in said operation, including the original cost of vehicles and equipment, the rent, repair and maintenance of same; the cost of drivers, gas, oil, bonds, licenses, etc., shall be included in operating expenses and are to be borne by said Johnson.

"Said Johnson agrees to devote his time exclusively to the purposes of the operation of the said company and do all things that are necessary to make the operation successful; including driving when necessary, making or having made all repairs, etc., necessary in the efficient operation of the vehicles of said company; make a daily report with Trip Sheets to the Secretary for making the necessary reports required by the Department of Public Works, etc.

"In case differences arise respecting this contract, both parties hereto agree to each appoint one arbitrator, the two arbitrators are hereby authorized to appoint an umpire, the three persons so appointed to constitute a board of arbitrators whose decisions on the questions in controversy shall be final.

"Executed in duplicate this second day of January, 1933. SUPERINTENDENT OF TRANSPORTATION Northeast Transportation co.

"R. C. Johnson        By D. M. Hinman, President.
(Seal)                By L. L. Goodwin, Secretary."

Relator alleged in its complaint that, on February 24, 1937, its board of directors adopted a resolution withdrawing from R. C. Johnson all authority which he, as superintendent of transportation, had theretofore exercised, except as was specifically enumerated in the contract of employment of January 2, 1933. By virtue of the terms of this resolution, he was directed to furnish to the company, at its main office in Seattle, daily reports in writing of the money and tickets received as fares from passengers carried under certificate No. 471; to deposit at stated periods, in the National Bank of Commerce to the credit of relator, all revenues coming into his hands from the above-mentioned transportation system; and to deliver to the general manager of the company on or before March 1, 1937, an itemized list and inventory of all personal property purchased with corporation funds or belonging to it. Relator also alleged in its complaint that defendant refused to comply with any of the provisions of this resolution.

On March 26, 1937, relator made written demand on Johnson for an accounting. Relator advised Johnson that, if it did not hear from him within three days in regard to the matters referred to in the letter, it would consider he was rejecting its request for an accounting and refusing to cooperate in this and all other matters pertaining to the conduct of the business of relator. It contends that this constituted a tender of arbitration to defendant in the main action pursuant to the terms of the above-mentioned contract.

Relator also alleged that Johnson has arrogated unto himself the entire management and control of relator's business under the aforementioned certificate; that he has refused to comply with the terms of the contract of January 2, 1933; and that he has failed and refused

to furnish to the relator the information required under the rules of the department of public service.

Relator further alleged that, during the year 1936, it became necessary to operate on its line an additional bus, and that defendant, with relator's funds, purchased a 1936 Kenworth Tri-Coach 29 passenger bus, Model C-21, Motor JXDM 567394, Chassis No. 8709, but instead of taking title thereto in the name of relator, he took title in his own name and executed a mortage to Seattle Trust & Savings Bank. Relator further alleged that Johnson is about to discontinue operation of the transportation system; that there is imminent danger that its right to certificate No. 471 may be impaired; and that defendant is insolvent and unable to respond to it for any damages which he may occasion by reason of his acts and conduct.

In view of the foregoing, relator prayed that an order to show cause be issued directing defendant to show cause why a temporary injunction should not be issued enjoining him during the pendency of this action from interfering with the regular operation of the busses under certificate No. 471; why he should not be enjoined from collecting revenues belonging to it; why he should not be enjoined from destroying, secreting, or disposing of any of the books, bus tickets, records, or memoranda under his control relating to the operation of the transportation system or any of the busses used in the operation thereof; and that upon final hearing the temporary injunction be made permanent.

Relator further prayed that the aforementioned contract be terminated and cancelled; that it be adjudged the owner of the 1936 Kenworth Tri-Coach bus; and that defendant be required to account to it for all sums of money which have come into his possession

through revenues derived from the operation of the transportation system.

In his answer, the principal defendant denied any violation of the contract and denied all the material allegations of the complaint. He also interposed a separate answer and cross-complaint containing many recitals in which it is alleged affirmatively that relator had made no offer whatever to arbitrate the questions in dispute between the parties. The reply put in issue the affirmative defense.

The principal action is one for purely equitable relief, upon which issue was joined by the principal defendant.

Defendant's motion for nonsuit was granted and the action was dismissed upon the ground that "plaintiff has not demanded arbitration pursuant to the terms of said contract."

Error is assigned in adjudging that relator could not maintain an action against the principal defendant upon the issues represented in its complaint without first demanding that the matters therein referred to be submitted to arbitration.

The matter is now before us on certiorari, the record being accompanied by a bill of exceptions, which recites:

". . . evidence was offered and admitted and the only evidence offered and admitted in said cause in respect of and relating to the matter of arbitration was and is as follows: . . ."

The bill of exceptions consists of eight pages and contains the one assignment of error, the decision of the trial court, the testimony of one of the attorneys relating to the written demand of March 26, 1937, for an accounting, and a resolution of relator's board of directors to the principal defendant under date of

March 24, 1937, and the certificate of the trial judge. That certificate to the bill of exceptions states, in part,

". . . that it embodies all of the evidence introduced upon the trial of said cause relating to or pertaining to the matter of arbitration . . ."

■ Manifestly, the record before us is deficient with respect to the matters complained of in relator's complaint, therefore—this being an action for equitable relief—we are precluded from passing upon the question raised by the relator.

In actions for equitable relief, all of the evidence must be brought to this court by a statement of facts. *The question whether a bill of exceptions has any place or function in an equity case was foreclosed in this court in* 1883. (*Parker v. Denney,* 2 Wash. Ter. 176, 2 Pac. 351.) *This court has never receded from the rule there enunciated.* We have never held that the rule was changed or in anywise modified by Laws of 1893, chapter 60, § 8, p. 114 (Rem. Rev. Stat., § 388 [P. C. § 7816]), which provides for certifying of bills of exceptions. There is language in the opinion in *Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673, from which the writer of the syllabus mistakenly assumed that we had departed from the rule announced in *Parker v. Denney, supra.* In *Parker v. Denney, supra,* we said:

"We wish to say further in regard to this notice, that it is altogether too prolix from beginning to end. Among other peculiarities, we remark that it embodies matter, showing that a bill of exceptions was made in the lower Court, and includes much that constitutes that bill. A bill of exceptions has no place nor function in a chancery cause. Besides encumbering the records, it greatly and uselessly enhances costs."

See, also, *Caton v. Switzler,* 3 Wash. Ter. 242, 13 Pac. 712.

In *Enos v. Wilcox,* 3 Wash. 44, 28 Pac. 364, we held that we would not pass upon the findings of fact and conclusions of law made by the trial court where the statement of facts had been stricken from the record on appeal in causes on equitable cognizance. We said:

"But it is insisted by counsel for appellants that even although the statement of facts should not be considered by the court in this case, still sufficient error appears in the record to work a reversal of the judgment. An examination of the assignment of errors discloses the fact that the errors relied on by appellants for reversal of the judgment all refer to the findings of fact and conclusions of law made by the court. But this being a cause of equitable cognizance, no findings of fact or of law were necessary. See *Kilroy v. Mitchell,* 2 Wash. 407 (26 Pac. Rep. 865). It is only in an action at law, where a jury is waived and the cause tried by the court, that findings of fact and conclusions of law are required to be filed. In such cases the findings of fact take the place of the verdict of a jury, and if the conclusions of law drawn from the facts as found by the court are unwarranted, or if the judgment is not supported by the findings, then such judgment will be reversed by the appellate court for error. See Code, §§ 245-7.

"But in an action for equitable relief, the rule is otherwise. Such a cause comes here for trial *de novo,* and in order to so try it, this court must be put as fully in possession of the whole case as was the court below. The testimony before the superior court in this case not having been properly brought up, it is impossible for us to determine what facts are, or are not, proven thereby; and as we must draw our own conclusions from the testimony we cannot, and should not, be bound by any conclusions or findings of the court below. It would seem clear that this court cannot try a cause anew upon the merits without being possessed of all the facts upon which the court below acted."

In *Cadwell v. First Nat. Bank,* 3 Wash. 188, 28 Pac. 365, we again held that, on appeal from final judgments

in equitable actions, the cause comes to this court for trial *de novo,* and in the absence of the testimony or of a properly settled statement of facts, the appeal will be dismissed.

We said in *Stanger v. Roeder,* 3 Wash. 412, 28 Pac. 748, 29 Pac. 211, that this court will not review the judgment of the trial court in an equity case where the record is made up of the pleadings and findings of the trial court, without the testimony submitted thereon:

"Before the codes, there were two universally recognized methods of reviewing causes: (1) By writ of error, in actions at law and criminal cases. (2) By appeal, in equitable actions. Both methods were purely creatures of the statute, and the almost universally adopted system of trial on appeal was that of the trial *de novo,* upon the entire record and testimony, precisely as it was presented in the trial court. U. S. Digest, Tit. 'Appeal,' p. 284. Bills of exceptions were not known in appeals, and had no place there; not even to preserve the testimony were they necessary, since it was all committed to writing and filed, so as to require nothing but certification. *Ferris v. McClure,* 40 Ill. 99; *Smith v. Newland,* 40 Ill. 100.

The adoption of the codes scarcely made an impression upon equity causes, so far as their trial in the lower or the appellate courts was concerned. But such of the testimony as came to be heard orally in the trial court was preserved for the appeal by a statement, or a case, and transmitted, with that which was in writing, under the certificate of the lower court that it contained all the testimony. Thompson on Trials, § 2772. The hearing in the appellate court was still a trial *de novo.* Some of the states have probably provided by their statutes that findings of fact made by the trial court may take the place of the testimony in cases where the parties are satisfied with that course, while others may, in the same manner, permit hearings on appeal upon the record alone. But in this matter it is of little profit to go beyond our own statutes, since they alone permit and regulate the review of causes

removed for that purpose from the superior courts. Powell's Appellate Proceedings, ch. 9.

"Under our territorial system, § 1869 of the organic act clearly preserved the distinction between actions at law and equitable actions on review, by prescribing that 'writs of error, bills of exceptions, and appeals' should be allowed from the final decisions of the district courts. These terms were used advisedly in the act of congress, in view of the system prevailing in the courts of the United States, where they are generically distinct and perfectly understood. The territorial statutes were always in harmony with the organic act in this particular, with the exception, perhaps, of the act of 1886 (Laws 1885-6, p. 70), which, in amending chapter 19 of the Code of 1881, attempted to make bills of exceptions applicable to causes in equity and admiralty, which could not, in the nature of things, well be done.

"In those times, therefore, the supreme court of the territory had no power to review any equity case except by trial *de novo*, to do which it must have the testimony before it, if there had been a trial of issues of fact in the district court. And that court so held in every instance, where the question was presented to it, with the two exceptions of *Seattle, etc., R. R. Co. v. Ah Kow*, 2 Wash. T. 36 (3 Pac. Rep. 188), and *Swift v. Stine*, 3 Wash. T. 518 (19 Pac. Rep. 63). In the former case the reasoning of the learned judge is perhaps good as an argument why the law should be as he held it to be, but it does not convince us that it was as there laid down, *obiter*. We say *obiter*, because the motion was to dismiss for want of proper certification of the evidence. The court said that, where there was no objection that the complaint did not sustain the judgment, it was unnecessary to bring up the evidence. But while the court thus decided to retain the cause, we find it almost entirely ignoring the complaint, treating the evidence as properly in, trying the cause *de novo*, reversing the judgment as to all but three of the plaintiffs for want of evidence, and rendering a new judgment with attorneys' fees for the excepted three; thus showing that the motion was not well taken because the evidence was properly certified, and that all

the discussion about holding the case on the pleadings and judgment was *dictum*.

"The same learned judge, who wrote the decision in *Seattle, etc., R. R. Co. v. Ah Kow*, wrote those in *Coleman v. Yesler*, 1 Wash. T. 591; *Pincus v. Light*, 1 Wash. T. 511; *Meeker v. Gardella*, 2 Wash. T. 355 (7 Pac. Rep. 889); *Parker v. Denney*, 2 Wash. T. 176 (2 Pac. Rep. 351); *Swift v. Stine*, 3 Wash. T. 18 (13 Pac. Rep. 904); and *Caton v. Switzler*, 3 Wash. T. 242 (13 Pac. Rep. 712); he concurred in *McGowan v. Petit*, 1 Wash. T. 514; *Mulkey v. McGrew*, 2 Wash. T. 259 (5 Pac. Rep. 842); and he wrote a dissenting opinion in *Nickels v. Griffin*, 1 Wash. T. 374, holding that in an admiralty case additional proofs should be admitted on appeal, the court, however, there deciding that only the proofs admitted below should be examined. *Kenyon v. Knipe*, 3 Wash. T. 243 (13 Pac. Rep. 759), was the last territorial case where this matter was discussed, and where the statement being struck from the record the judgment was affirmed. *Swift v. Stine*, 3 Wash. T. 518 (19 Pac. Rep. 63), came later, and on re-hearing, by the vote of two new justices, reversed *Swift v. Stine*, 3 Wash. T. 18 (13 Pac. Rep. 904), without any discussion, and we think without good grounds therefor. All of the cases enumerated, with the exceptions named, either held directly, or assumed it to be the law, that the supreme court must have the evidence before it or there could be no review, in an equity case, and we have in *Enos v. Wilcox*, ante, p. 44, and *Cadwell v. First National Bank*, ante, p. 188, yielded our adherence to that view of the proper rule."

The foregoing was followed in *McNatt v. Harmon*, 3 Wash. 432, 28 Pac. 748. See, also, *McKinnon v. Kingston Land & Imp. Co.*, 4 Wash. 535, 30 Pac. 642; *McCarty v. Heyden*, 4 Wash. 537, 30 Pac. 537. In the last cited case, we held that, in an equity case, it would not be a sufficient compliance with the rule that all the evidence introduced at the trial was certified to this court by the clerk of the trial court.

There was language in *Doyle v. McLeod*, 4 Wash. 732,

31 Pac. 96, somewhat at variance with the rule that all of the evidence must be brought to this court by a statement of facts in actions for equitable relief. The question, however, in that case was whether the certificate that the statement contained all the material facts, including all expenses in the case, was sufficient.

"This court has many times held that it will not undertake to try a cause of equitable cognizance without being in possession of all the facts upon which the judgment of the lower court is founded. And what the facts were can only be made known to this court by a certificate of the court or judge who tried the cause or rendered the judgment, order or decision from which the appeal is taken.

"The appeal is dismissed . . ." *Tacoma Foundry & Machine Co. v. Wolff,* 4 Wash. 818, 30 Pac. 1053.

"This is an action of equitable cognizance, and the record contains no statement of facts. For this reason the respondents move to dismiss the appeal. Under the uniform rulings of this court, we will not undertake to review the judgment in such cases in the absence of the facts upon which it was based, duly certified by the judge who tried the cause. The motion must prevail, and the appeal is, accordingly, dismissed." *Whittier v. Cadwell,* 4 Wash. 819, 30 Pac. 1098.

"The respondents move to dismiss this appeal upon the ground that no statement of facts has ever been settled or certified as required by law. This being a cause of equitable cognizance cannot be tried *de novo* without a duly certified statement of the facts upon which the court below based its judgment.

"There being no such statement in the record, under the uniform rulings of this court, the appeal must be dismissed." *Whittier v. Cadwell,* 4 Wash. 820, 30 Pac. 1097.

In *Smith v. State,* 5 Wash. 273, 31 Pac. 865, we held that, on appeal in an equitable cause where an issue of fact has been made and testimony has been taken, it is necessary that a statement of facts be settled and

brought up for review, although the only question the appellant desires to raise is as to the constitutionality of a certain act of the legislature.

"We are unable to agree with the contention that the general finding to the effect that the deed was given as security, and not otherwise, is a mere conclusion of law. It probably was based upon detailed facts and circumstances shown by the evidence; and in this respect it may be in a sense a conclusion of fact, as are practically all findings of fact except such as are clothed in the very words of the evidence on which they are based. It is the ultimate or general fact found. In the absence of the evidence, which is not here for our review, we must conclude that this finding is a correct statement of the intention of the parties to the deed. *Rathbun v. Thurston County,* 2 Wash. 564, 27 Pac. 448; *Ferry v. King County,* 2 Wash. 337, 26 Pac. 537. Besides, this is a suit in equity, and as has been held by this court no formal findings are necessary to support the decree. (*White Crest Canning Co. v. Sims,* 30 Wash. 374, 70 Pac. 1003); from which it follows that incomplete or defective findings of fact will not render the decree erroneous unless it affirmatively so appears therefrom. *Slyfield v. Willard,* 43 Wash. 179, 86 Pac. 392; *Gould v. Austin, ante* p. 457, 100 Pac. 1029." *Clambey v. Copland,* 52 Wash. 580, 100 Pac. 1031.

In holding that findings of fact are not necessary in equity, therefore the omission to find a precedent tender of taxes paid does not vitiate a decree for the recovery of land sold for taxes, we said in *Thompson v. Emerson,* 55 Wash. 138, 104 Pac. 201, which was an appeal from a judgment entered upon findings:

"The court did not make any findings on the issue of tender—failing to find whether or not, prior to the commencement of the action, the respondents had tendered to the appellants the amount of taxes they had paid on the property. The evidence on which the findings and decree are based are not in the record brought to this court; and the appellants basing their claim of error on the contention that these findings

of fact did not justify either the conclusion of law drawn therefrom or the decree entered by the trial court.

"The appellants rely for reversal on the fact that there is no finding of tender to the appellants of the taxes paid by them prior to the commencement of the action. That such a tender is a prerequisite to the right to maintain an action to recover land sold for taxes, and that it must be pleaded and proven as a precedent condition to the right to recover, must be conceded. It is so provided by statute, and has been asserted to be the rule by this court in a long line of cases. Bal. Code, §§ 5678, 5679 (P. C. §§ 8733, 8734); *Merritt v. Corey,* 22 Wash. 444, 61 Pac. 171; *Rowland v. Eskeland,* 40 Wash. 253, 82 Pac. 599; *Moyer v. Foss,* 41 Wash. 130, 83 Pac. 12; *Kahn v. Thorpe,* 43 Wash. 463, 86 Pac. 855; *Ontario Land Co. v. Yordy,* 44 Wash. 239, 87 Pac. 257.

"It must be conceded also that the findings are defective in the respect complained of. But it does not follow from this that the decree is void because of this defect. In an action of equitable cognizance, such as this one, there is a wide difference between the omission to find that an essential element governing the right to recover existed, and an affirmative finding that it does not exist. Since no formal findings of fact are necessary to support a decree in equity, it must follow that merely defective or incomplete findings will not render a decree invalid; for surely if the decree is valid without any findings at all, it cannot be in a worse position simply because it is accompanied by defective or incomplete findings. A decree without findings, or defective or incomplete findings, is sustained on the principle that the proceedings of courts of superior and general jurisdiction are presumed to be regular. In other words, error must appear affirmatively; it is not presumed from any mere defect or omission in matters that are not essential to be shown in order to constitute a valid record. So in the case before us, since it was not necessary that there be findings to support the decree, incomplete or defective findings will not invalidate it. The court will presume, in order to sustain the decree, that it was warranted

by the evidence. Had the findings shown affirmatively that no tender had been made, a different question would have been presented; there would then have been no room for the presumption of regularity, and the decree would have been reviewed for error. But such a result does not follow from an omission in the findings. This question was before the court in *Gould v. Austin,* 52 Wash. 457, 100 Pac. 1029, and in *Clambey v. Copland,* 52 Wash. 580, 100 Pac. 1031, and was in each of them decided in accordance with our present holding."

In *Harbican v. Chamberlin,* 82 Wash. 556, 114 Pac. 717, we held that the decree of the trial court in an action of equitable cognizance is entitled to every presumption necessary to sustain it in the absence of an affirmative showing in the finding itself that the necessary facts to sustain it did not exist. We said:

"The appellants advance the single claim that a grantee of mortgaged premises, taking through mesne conveyances, and whose immediate deed contains a clause by which, in terms, he assumes the mortgage and agrees to pay the mortgage debt as a part of the purchase price, cannot be held personally liable for the debt or for any deficiency remaining on foreclosure of the mortgage, when any prior grantee in the chain of mesne conveyances did not assume the mortgage. Since we cannot review the evidence, it is obvious that it will be unnecessary to decide this question unless it can be said that the findings show a gap in the chain of assumptions. Assuming, without deciding, that such an hiatus would defeat the claim to the right of a personal judgment against the appellants, where there is no independent consideration for the assumption, still, under our uniform decisions, the findings here must be held sufficient to support the decree for two reasons: (1) because it does not affirmatively appear from the findings that there was in fact any gap in the assumptions in the chain of mesne conveyances through which the appellants claim; (2) because the deed to the appellants in which it is affirmatively found that they

did expressly assume the mortgage, imports a con-
sideration.

"The appellants reverse our first proposition, and
argue that, inasmuch as the court did not affirmatively
find that there was an unbroken chain of assumptions,
the findings are insufficient to support the personal
judgment against them. The court, however, did find
the ultimate fact·necessary to sustain the judgment,
namely, that the appellants 'assumed and agreed to
pay said note and said mortgage according to the terms
thereof.' So far as we are advised, no court has yet
held that the failure to find every probative fact neces-
sary to the establishment of the ultimate facts upon
which a decree is founded, will, in the absence of a
timely request for such complete findings, render the
findings of the ultimate fact insufficient to sustain the
decree. This court has uniformly held to the contrary.
To sustain the appellants' view would place upon the
trial judge the intolerable burden of making, on its
own initiative, a specific finding on every probative
fact of which there was any evidence. It would re-
quire him to make the findings almost as voluminous
as the statement of facts on pain of a reversal for in-
sufficient findings. Indulging every intendment against
the findings, the most that can be said of them, in the
absence of the evidence, is that the fourth finding is
defective or incomplete. We have consistently held
that, where the findings are merely defective, it will
be presumed that the evidence supports the judgment.
If this presumption is to be overcome, the evidence, as
well as the defective finding, must be brought to this
court in such manner and upon such exceptions as to
enable us to review it. *Gould v. Austin,* 52 Wash. 457,
100 Pac. 1029; *Thompson v. Emerson,* 55 Wash. 138, 104
Pac. 201; *Nelson v. McPhee,* 59 Wash. 103, 109 Pac.
305. The true rule is that the decree of a trial court
in an action of equitable cognizance is entitled to every
presumption necessary to sustain it, in the absence of
an affirmative showing in the finding itself that the
necessary facts to sustain it did not exist. *Magee v.
Risley, ante* p. 178, 143 Pac. 1088. The recent decision
in *Katterhagen v. Meister,* 75 Wash. 112, 154 Pac. 673,
does not combat, but illustrates, the sound limits of

this rule. In that case, the findings were neither defective nor incomplete. They were full and specific. The facts affirmatively found negatived the correctness of the judgment, which is the direct converse of the case here presented . . .

"However reluctant, we are forced to hold that we cannot review the evidence. The finding that the appellants in fact assumed the mortgage and promised to pay the debt imports a valid consideration, in the absence of evidence to the contrary. We must assume, in support of the decree, that there was evidence either of a continuous line of assumptions or that there was proof of an independent consideration for the promise."

In *Bannister v. Cavanaugh,* 175 Wash. 451, 27 P. (2d) 695, we quoted with approval from the foregoing opinion and held that, if the findings of fact in a cause of equitable cognizance are deficient, it will be presumed, in the absence of a statement of facts, that the evidence supports the judgment.

In the opinion in *Rich v. Kruger,* 130 Wash. 658, 228 Pac. 1012, there is some language as to the application of the rule for consideration of findings of fact in an equity cause in the absence of a statement of facts, from which it may be inferred that we slightly departed from the rule first announced in territorial days and consistently followed until a comparatively recent date; however, that language was not necessary to the decision, the result of which is in conformity to the rule first enunciated in *Parker v. Denney,* 2 Wash. Ter. 176, 2 Pac. 351.

In *Clifford v. Callarman,* 157 Wash. 546, 289 Pac. 1013, in which there were no findings of fact and all of the evidence was not brought to this court by a statement of facts, we held that it will be presumed under such circumstances that the court's decree is supported by evidence other than that which the incomplete statement of facts discloses, which would require an

affirmance of the decree. That opinion is in harmony with the rule that all of the evidence must be brought to this court by a statement of facts in actions for equitable relief. See, also, *Moss v. Moss,* 163 Wash. 444, 1 P. (2d) 916.

In *In re Flynn's Estate,* 181 Wash. 264, 43 P. (2d) 8, in which we held, on appeal from a judgment entered upon findings in favor of the defendant, that an action for an accounting of partnership assets is an equitable proceeding triable *de novo* on appeal, in which findings are unnecessary, and a decree presumptively based on facts not in the record can not be reviewed in the absence of the evidence, we said:

"The appellant makes but one contention; namely, that the findings of fact do not support the conclusions of law of the decree of distribution.

"This being an action and proceeding to obtain an accounting of partnership assets, it is of equitable cognizance and, as such, is triable *de novo* in this court. *Mulready v. Shelton,* 140 Wash. 233, 248 Pac. 416.

"An approach to the question presented upon this appeal must be had with certain well established rules in mind: (1) In equity cases, triable *de novo,* findings of fact, though permissible, are not essential or necessary to support a decree; (2) in such cases, the decree is entitled to every presumption necessary to sustain it, in the absence of an affirmative showing in the findings that the facts necessary to sustain the decree do not exist; (3) even though the findings are indefinite, uncertain, and incomplete, a decree presumably based upon facts not disclosed by the record can not be reversed when the evidence is not brought before the reviewing court. These rules are amply supported by the following cases: *Thompson v. Emerson,* 55 Wash. 138, 104 Pac. 201; *Harbican v. Chamberlin,* 82 Wash. 556, 144 Pac. 717; *Smith v. Dement Brothers Co.,* 100 Wash. 139, 170 Pac. 555; *Rich v. Kruger,* 130 Wash. 656, 228 Pac. 1012; *Wilkeson v. Rector, etc., St. Luke's Parish,* 176 Wash. 377, 29 P.

(2d) 748; *Incorporated Investors v. Bridges,* 178 Wash. 321, 34 P. (2d) 881. As already stated, there is no statement of facts in the record before us."

Relator cites *Northern Life Ins. Co. v. Walker,* 123 Wash. 203, 212 Pac. 277, in support of the proposition that a bill of exceptions should not be disregarded because it does not contain all of the facts and proceedings, if it contains sufficient facts to present the only error upon which appellant relies for reversal. The authority cited is not apposite. The following quotation from the opinion in the case cited clearly discloses that a law action came into being, although it originally commenced as a suit in equity:

"We think it will appear as we proceed that the issues were so developed by the pleadings of the respective parties that the controversy became, in legal effect, a simple action at law wherein the defendant sought recovery upon the policy as the beneficiary thereunder."

*State ex rel. Baer v. Superior Court,* 152 Wash. 407, 278 Pac. 169, does not sustain the position of relator that an appellant, desiring to present only the facts bearing on a single question, may under Rem. Rev. Stat., §§ 387-389 [P. C. §§ 7815-7817], present them by a bill of exceptions without including all of the evidence. In the case cited, we held that an application for a writ of mandamus to compel the superior court to certify a proposed bill of exceptions will be denied where there is no arbitrary action, but a good faith endeavor to perfect the record. Our statement in the next to last paragraph of the opinion, respecting the suggestion in the return that the bill of exceptions does not conform to the requirements of a statement of facts on an appeal in equity cases, is dictum. Even if the purported bill of exceptions were certified by the trial court, as required by the statute (Rem. Rev. Stat., § 391 [P. C. § 7819]), we could not consider same, in

view of the rule which requires, in actions for equitable relief, that all of the evidence must be brought to this court by a statement of facts.

The reforming tendency of the present period is, as it has been for more than nine decades, towards an obliteration of the lines which divide the two jurisdictions of law and equity. The reform, which was inaugurated by the state of New York in 1848, was adopted by this state in 1854 (Laws of 1854, p. 131, § 1; Rem. Rev. Stat., § 153 [P. C. § 8253]). While the two jurisdictions of law and equity were so far combined that both have, since the enactment of 1854, been administered by the same court and judge, nineteen years subsequent to the statute of 1854, we enunciated the rule, which we followed consistently ever since, that a bill of exceptions has no place or function in an equity case. *Parker v. Denney*, 2 Wash. Ter. 176, 2 Pac. 351.

The external distinctions of form between suits in equity and actions at law have been abrogated, but the distinction between law and equity is as broad as ever. The statutory provision of 1854 that there shall be but one form of civil action was not intended to reform appellate procedure to the extent of giving a bill of exceptions a place in an equity case, nor do the statutes of practice and procedure subsequent to 1854 lend support to any such contention.

The peremptory writ of review should be, and it is, denied.

STEINERT, C. J., BLAKE, GERAGHTY, and ROBINSON, JJ., concur.

HOLCOMB, J. (dissenting)—The majority of cases cited in the prevailing opinion to sustain the decision herein were antiquated cases and followed in the later decisions cited.

The trial judge certified that the bill of exceptions "embodies all of the evidence introduced upon the trial of said cause relating to or pertaining to the matter of arbitration."

The majority hold:

"The record before us is deficient with respect to the matters complained of in relator's complaint, there-fore—this being an action for equitable relief—we are precluded from passing upon the question raised by the relator."

This being a mere matter of procedure, all of the former cases relied upon by the majority should be overruled and the principle established that only so much of the evidence must be incorporated in the bill of exceptions as is necessary to a review of the ques-tion presented. As a rule, the bill need not, and should not, contain all of the evidence taken at the trial, but only so much as may be necessary to explain the points specified. 8 Bancroft's Code Practice and Remedies, 8948, § 6753.

If it cannot be done otherwise, a formal rule should be adopted by this court to that effect. It is useless to bring an entire record in an equity case to this court where there is only a simple issue involved. It is ex-pensive for appellants and burdensome upon this court to be compelled to read an entire record in such matters.

Furthermore, the contract before us is one of em-ployment by a corporation of R. C. Johnson to render personal services in the supervision of relator's busi-ness for a period of five years. Such a contract is void, *ab initio, in toto. Llewellyn v. Aberdeen Brewing Co.,* 65 Wash. 319, 118 Pac. 30, Ann. Cas. 1913B, 667; *Murray v. MacDougall & Southwick Co.,* 88 Wash. 358, 153 Pac. 317; *Barager v. Arcadia Orchards Co.,* 91 Wash. 294, 157 Pac. 675; *Williams v. Great Northern R.*

*Co.,* 108 Wash. 344, 184 Pac. 340; *Hansen v. Stirrat & Goetz Inv. Co.,* 144 Wash. 118, 256 Pac. 1033; *O'Donnell v. Sipprell, Inc.,* 163 Wash. 369, 1 P. (2d) 322, 76 A. L. R. 1405; *Heideman v. Tall's Travel Shops, Inc.,* 192 Wash. 513, 73 P. (2d) 1323.

Being void *ab initio, in toto,* the arbitration clause was void as well as the rest of it. That clause misled the trial court into error. It would be absurd to say that, while no part of the contract is enforceable by either party, the clause providing for arbitration, which is dependent upon the remaining provisions of the contract, is sufficiently valid to bar the right of the corporation to sue without first having tendered arbitration.

The writ should be granted.

For the foregoing reasons, I dissent.

BEALS, J. (dissenting)—In view of the many statutes passed and rules promulgated for the purpose of simplifying judicial procedure, I am of the opinion that this court should now depart from the strict rule laid down in our early cases, cited by the majority, and declare that, on appeal from a decree entered in an equitable cause, the question to be reviewed may, in proper cases, be presented upon a bill of exceptions.

An appeal is prosecuted for the purpose of reviewing a ruling of the trial court, which a party to the cause believes to be unjust and not in accordance with law. For many years, legislatures and courts have been endeavoring to simplify appellate procedure so that questions sought to be reviewed may be presented with the least trouble and expense to the parties, and in such form as to enable the appellate court to determine the question at issue with the least possible expenditure of time and labor.

This court has several times stated, in determining

appeals in law cases, that the practice of bringing before us the facts necessary to the determination of the questions to be decided, by bill of exceptions instead of by a complete statement of facts, is to be encouraged. Certainly, a short bill of exceptions, which the trial court certifies as containing all the evidence in the record necessary to review the particular point to be presented on appeal, is far more satisfactory to the appellate court than a long statement of facts, containing much matter entirely irrelevant to the appeal, out of which must be selected, with time and effort, those portions which must be considered. Frequently, a statement of facts containing several hundred pages could be reduced to a bill of exceptions containing no more than fifty pages, at a great saving of time and money to the parties, as well as of labor on the part of the appellate tribunal.

The trial court may be relied upon to see to it that any bill of exceptions which is certified contains everything necessary to a proper review of the court's ruling. As we said in the case of *State ex rel. Baer v. Superior Court*, 152 Wash. 407, 278 Pac. 169, the broad discretion of the court in overseeing the preparation of the bill of exceptions will not be interfered with in the absence of arbitrary action, and we have several times held that we will not require the trial court to certify either statement of facts or bill of exceptions which the trial court says is not correct or complete. In the case cited, this court, speaking through the late Judge Fullerton, said:

"In the return, it is suggested that the bill of exceptions does not conform to the requirements of a statement of facts on an appeal in equity causes. But, if we understand the position of the relators, they contend that their liability depends on the question

whether they were guilty of fraud in the transaction, and that they desired to present to the appellate court only the facts bearing upon this single question. This being the purpose, they are within their rights in presenting them by a bill of exceptions. Rem. Comp. Stat., §§ 387, 388, 389."

While this paragraph was not necessary to the determination of the precise point upon which the appeal turned, it was a question argued on the appeal, and the paragraph cannot properly be classified as mere dicta, as it laid down a rule to be followed in the case then being considered, which, had the case finally reached this court on appeal, would undoubtedly have been considered as the law of the case.

Rem. Rev. Stat., § 153 [P. C. § 8253], provides:

"There shall be in this state hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be called a civil action."

This section was enacted in 1854, and has ever since been the law. While distinctions between cases at law and in equity have properly been preserved, there is nevertheless but one form of action, different rules of procedure applying to different phases of the litigation, as one measure or another of relief may be demanded.

Appellate procedure is outlined in Rem. Rev. Stat., § 308-10 [P. C. § 8676-13]. The procedure for presenting before this court the evidence to be considered on appeal is found in this section, which refers both to a bill of exceptions and statement of facts, without regard to the nature of the case in which an appeal is taken. It is, of course, true that, in an equity case, findings of fact need not be made, and on appeal the cause is considered by this court *de novo*, but I cannot understand why this distinction is important in con-

nection with the manner in which the evidence be brought before this court. If the trial judge, who thoroughly understands the action which he has heard and determined, certifies that a bill of exceptions contains all of the evidence necessary to be considered in reviewing the judgment which he has entered in connection with the points to be raised by the appellant on the appeal, this court can still determine the matter *de novo,* and the absence of findings is, in my opinion, unimportant. The appellant may be relied upon to see to it that the record on appeal contains sufficient to enable this court to decide the questions presented. Of course, the opposing party may bring up the entire record, if it be deemed desirable to do so, or may supplement the bill of exceptions to any extent deemed proper to preserve his rights.

Many equitable causes embrace a large number of separate and distinct matters. Frequently, in causes involving liens, half a dozen claimants seek foreclosure against the same property. If one of these lien claimants deems himself aggrieved by the decree entered, must he, on appeal, prepare a statement of facts containing all the evidence in connection with the other liens, which nowise concern him— a useless expense to the litigants and an annoyance to this court? Many other cases may be imagined in which the rule laid down by the majority will cause great expense and trouble, without any corresponding advantage. In my opinion, this court should now hold that, in actions in equity, as well as in those at law, the appellant may, in proper cases, present to this court, by way of a bill of exceptions, the evidence necessary to determine the questions raised by his appeal.

I accordingly dissent from the conclusion reached by the majority.

MAIN and SIMPSON, JJ., concur with BEALS, J.

ON REHEARING.

[*En Banc.* July 27, 1938.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adheres to the *En Banc* opinion heretofore filed herein.