[No. 23195.   Department Two.   July 9, 1931.]

J. A. O'DONNELL, *Appellant*, v. JAMES E. SIPPRELL, INC., *et al.*, *Respondents*.[1]

*Arthur H. Hutchinson*, for appellant.

*Shumate & Clarke*, for respondent.

MILLARD, J.—Alleging false and fraudulent representations made by the defendant corporation's president and counsel induced him to enter into a contract of employment with the corporation, and to enter into an agreement with the corporation's president for the purchase of stock in the corporation, plaintiff commenced an action against the corporation and its

[1]Reported in 1 P. (2d) 322.

president and counsel to recover five thousand dollars damages and unpaid salary of twelve hundred and fifty dollars. When the cause was called for trial, the plaintiff dismissed the action as against all of the defendants except the corporation, waived the fraud alleged in his complaint and the claim for five thousand dollars, and stated he was proceeding upon the theory of *quantum meruit* for recovery of one hundred and twenty-five dollars a month against the corporation for a period of ten months.

The cause was tried to the court, which found that the plaintiff continued in the employ of the corporation for a period of ten months; that he was paid one hundred and fifty dollars each month by the corporation, and that the remaining one hundred and twenty-five dollars of his salary had been applied on the purchase price of Mr. Sipprell's personal stock in the corporation pursuant to the terms of the contract; that on July 29, 1930, the plaintiff demanded an additional payment in cash of one hundred and twenty-five dollars a month for a period of ten months, which payment he demanded be made August 7, 1930, and at the same time the plaintiff informed the defendant that he was through with the contract, and did not intend to continue longer in the service of the corporation under the terms of the contract.

The court further found that the corporation and Sipprell were willing to carry out the terms of the contract, and that they so informed the plaintiff at the time he demanded a cash payment of twelve hundred and fifty dollars; that the twelve and one-half shares of stock of the corporation mailed to the plaintiff August 6, 1930, which constituted the amount of stock for which the plaintiff had paid during his ten months' service at the rate of one hundred and twenty-five dollars monthly, had not been tendered back to the de-

fendant by the plaintiff, but that, without notice to the defendant, the plaintiff tendered the stock certificate into court and made a further tender of the stock back at the time of trial; that by the payment to plaintiff of one hundred and fifty dollars cash monthly for ten months and the tender and delivery of twelve and one-half shares of the capital stock, the defendant corporation and Mr. Sipprell had fully complied with the terms of the contract; and that the plaintiff was not entitled to recover any sum for salary upon the theory of *quantum meruit*. Judgment was entered dismissing the action. The plaintiff has appealed.

On October 7, 1929, the appellant, the respondent corporation, and James E. Sipprell, president of the respondent corporation, entered into an oral agreement under the terms of which the appellant was to be employed as credit manager and auditor of the respondent for a period of three years at a monthly salary of two hundred and seventy-five dollars. Of each month's salary, one hundred and fifty dollars was to be paid to the appellant in cash and the remainder of one hundred and twenty-five dollars was to be paid to James E. Sipprell to apply upon the purchase of forty-five shares of Sipprell's stock in the respondent corporation, sold the appellant at the agreed price of one hundred dollars a share. So far as material, the contract, in the form which was executed by the parties on December 24, 1929, reads as follows:

"It is agreed, as follows: First:—That the party of the first part hereby employs the party of the third part in the capacity of auditor and credit and financial manager of said corporation at a salary of Two Hundred Seventy-five ($275) Dollars per month, to be paid monthly at the times and in the manner hereafter set forth. Second:—The party of the second part hereby agrees to sell and has sold, and the party of the third part agrees to buy and has purchased forty-five

(45) shares of the capital stock of James E. Sipprell, Inc., of the par value of One Hundred ($100) Dollars each, for the sum of Forty-five Hundred ($4500) Dollars. Out of each month's salary there shall be paid to third party the sum of One Hundred Fifty ($150) Dollars in cash, and the remainder thereof, to-wit, the sum of One Hundred Twenty-five ($125) Dollars shall be applied upon the purchase price of said stock, to the end that Fifteen Hundred ($1500) Dollars shall be paid annually for a period of three (3) years upon the purchase price of said stock. It is agreed that second party may hold said stock as collateral security until the whole thereof is fully paid and discharged. The application of third party's salary in the manner above set forth shall be considered a full, complete discharge and payment of all obligations owing to the party of the third part for his services as auditor and credit and financial manager of the corporation, and second party shall cause to be transferred from the stock now owned by him, forty-five (45) shares of the capital stock of James E. Sipprell, Inc., on the books of the company to the party of the third part, and in turn he shall endorse said certificate of stock in blank, which certificate shall be held by second party until the whole thereof is fully paid as provided for by the terms of this agreement. Third:—This agreement shall be in full force and effect as of the 7th day of October, 1929, and continue to the 7th day of October, 1932, at which time, under the terms of this agreement, the capital stock sold to third party by second party shall have been fully paid for.''

The appellant worked for the respondent pursuant to the terms of the foregoing contract until August 7, 1930, a period of ten months. Respondent's president testified that on July 29, 1930, he was notified by the appellant that the latter was through with the contract, and that his services would terminate August 7, 1930; that appellant demanded that on August 7, 1930, he be paid twelve hundred and fifty dollars, which was the amount retained from appellant's salary and applied

upon the purchase during the ten months' period by the appellant of Mr. Sipprell's stock. The appellant was, at the time he gave notice of the termination of his service, informed by respondent's president and respondent's attorney that, so far as the respondent was concerned, the appellant could continue in the respondent's employ under the terms of the contract; that if the appellant left the service of the corporation, it would be his own voluntary action and not at the instance or request of the corporation or Mr. Sipprell, personally. Appellant insists that he was discharged by the respondent; that he did not resign.

On August 6, 1930, respondent's counsel transmitted by mail to the appellant twelve and one-half shares of stock in the respondent corporation, being the amount of capital stock for which, under the terms of the contract, the appellant had paid during his ten months' employment. The letter of transmittal, reading as follows, advised the appellant that his resignation was accepted:

"Your notice to the officials of James E. Sipprell, incorporated, in the month of July, that you were leaving the services of the company as auditor and credit manager on the 7th day of August, 1930, is hereby acknowledged, and your resignation is accepted as expressed in your oral notice, above set forth. Your salary at the rate of $150 per month was overdrawn on the first day of August in the sum of $100. For your services in August you are entitled to a credit of $37.50, which leaves you owing the company, on account of overdrawn salary, the sum of $62.50. While your notice of withdrawal from further services as auditor and credit manager of James E. Sipprell, Inc., in effect constitutes a breach of your contract dated the 23rd of December, 1929, yet Mr. Sipprell feels that you should have the amount of capital stock in James E. Sipprell, Inc., which, under the terms of your contract, you have paid for. Your having been in the service of the company for ten months, this would entitle you to 12½

shares of Mr. Sipprell's stock, which you agreed to purchase, and we are, therefore, enclosing you herewith, certificate for twelve and one-half· shares of the capital stock of James E. Sipprell, Inc.''

The appellant did not return the stock certificate to to the respondent, but deposited same with the clerk of the superior court subject to the orders of the court, and immediately commenced an action against the respondent corporation and its president and counsel, resulting as recited above. .

■ We agree with appellant that the question whether he resigned or was discharged is not material. The powers of the respondent corporation, which was organized under the laws of this state, are prescribed in part as follows:

''(4) To appoint such officers, agents and servants as the business of the corporation shall require, to define their powers, prescribe their duties, and fix their compensation; .

''(5) To require of them such security as may be thought proper for the fulfillment of their duties, and to remove them at will; . . .'' Rem. Comp. Stat., § 3809.

The respondent was at liberty to discharge the appellant from its service at any time, as the appellant was at liberty to resign.

We held in *Llewellyn v. Aberdeen Brewing Co.*, 65 Wash. 319, 118 Pac. 30, Ann. Cas. 1913B 667, that, notwithstanding the express contract of employment ·by the defendant of the plaintiff for an agreed term of three years, by virtue of the corporate powers presscribed by the statute above quoted the employee could be removed by the corporation without rendering the latter liable for that portion of the employee's salary which would fall due thereafter, had his employment continued. We said:

"Ordinarily trustees of corporations in this state are elected annually. If they were authorized to appoint officers, agents, and servants to positions of responsibility and trust in the management of corporate affairs, and extend their appointment over a term of years, and thus deprive succeeding trustees of the power of removal, they could by such procedure indefinitely perpetuate any business policy, one even that might be detrimental to the interests of the stockholders, who would be unable to obtain relief through the election of different trustees or by other methods. To avoid the possibility of such an arbitrary exercise and abuse of power, the legislature conferred upon the corporation authority to remove its officers, agents, and servants at will. Appellant knew of this statutory authority when he entered into his contract of employment; that it would constitute a part of the contract, and that respondent could remove him at will. The trial judge held he could be so removed, and we fail to see how the statute is susceptible of any other construction. This conclusion is well sustained by authority."

Relying on *Union Savings & Trust Co. v. Krumm,* 88 Wash. 20, 152 Pac. 681, as sustaining authority, appellant contends that the contract is absolutely void; that, being void, the appellant is entitled to the value of his services during the ten months' period of employment; and that, while the contract may be examined to ascertain the value of the services, only payment can be made in cash.

In the case cited, we said:

"It is, however, the rule in such cases that a party performing services under a contract void as in contravention of the one-year statute of frauds may recover for the work actually performed on a *quantum meruit,* and the value of the services are measured by that fixed in the contract. This, on the principle that one who has accepted the benefit to the extent of the work performed is estopped to deny the liability."

The contract is unenforceable by either party. However, as the courts uniformly hold in such cases, the

employee may recover the value of the services rendered. The recovery is allowed upon the theory that a benefit has been received, from which springs an implied undertaking to pay the value of such services. The right to *quantum meruit* for services rendered under an unenforceable contract is discussed as follows on page 895 of L. R. A. 1916D:

"Where either goods or services are furnished by one person to another who accepts them and derives the benefit therefrom, the courts hold, as a general rule, that the latter is liable as upon an implied contract to pay the value of that which he receives. Where services are performed under a parol contract unenforceable because not to be performed within a year, the situation is the same and the same principle is applicable.

"In such a case the contract is either void and considered as nonexistent *ab initio,* or voidable and considered as nonexistent as soon as it is repudiated by either party. Repudiation may be effected by a breach on either side, or, in absence of a breach, by an action by the servant in *quantum meruit,* or by the setting up by the master of the statute in an action brought by the servant on the contract. Thus, it is only in cases where neither party has breached the contract and, in addition thereto, where the servant bases his action upon contract, and the master makes no defense on the ground of the statute, that even a contract considered voidable may, aside from the matter of part performance, be given any effect in an action to recover for services rendered thereunder. And in cases of that kind the matter of *quantum meruit* would not be raised. Therefore, for the purposes of this discussion it may be said that the rights and obligations of the parties depend in no way upon the express contract, but arise wholly out of the contract implied by law from the acceptance of the services rendered. For that reason the question as to who breached the express contract is, even in jurisdictions where the statute is held to render parol contracts merely voidable, not a proper one for

consideration. The breach by either party will avoid it, and, having been avoided, no liability or obligation can be imposed upon the party guilty of the breach. And, moreover, the rights and liabilities existing between the parties under the implied contract can scarcely be said to be in any way dependent upon the identity of person who breached a wholly independent and void express contract. The servant has performed certain services and the master, having had the benefit of them, must make compensation. Therefore, for a court to inquire, before rendering judgment in an action of *quantum meruit*, into the question as to who breached the contract, is both unnecessary and improper, and a decision based upon any such consideration must be deemed incorrect.

"If it is objected that under this rule a servant may by his own default avoid a contract and recover greater compensation than that agreed upon, it may be answered that a master may by his default avoid a contract and, in an suitable case, compel his servant to be satisfied with a lesser compensation than that specified in the contract. But, aside from this, both the master and the servant enter into the parol contract knowing that it may be avoided by either, and if they are satisfied to take that risk they should not be heard to complain when called upon to abide by the consequences.

"While, in many instances, the courts are so hazy and indefinite in their reasoning that a perusal of the cases without independent consideration is liable to prove both unsatisfactory and misleading, practically all the decisions are in harmony with these principles. There are numerous authorities for the proposition that where the master has breached the contract, or has refused to pay the contract price for the services rendered thereunder, the servant may recover the value of such services as upon *quantum meruit*. And where the servant has breached the contract, the courts are practically unanimous in holding that he may recover the value of the services rendered. In only two jurisdictions have the courts held otherwise, and in one of these the rule has been questioned in a later case."

That the reasonable value of appellant's services during the ten months' period of employment was two hundred and seventy-five dollars a month, is not disputed. That the appellant received of the amount due one hundred and fifty dollars in cash monthly during the period he was employed, is admitted. The only question for determination is whether the payment by respondent for the appellant of one hundred and twenty-five dollars monthly to Sipprell for stock purchased by the appellant from Sipprell, constituted payment to appellant of the remainder due to appellant.

It is not necessary to look to the contract for the measure of the value of the services of the appellant. Neither is it necessary to examine the contract to ascertain what was the medium of payment for those services. The facts are not in dispute. Appellant accepted something other than legal tender in part payment for his services, therefore full effect must be given to such payment.

"While a creditor is not bound in the absence of specific agreement to accept anything but legal tender in payment of an obligation which by its terms is payable in money, he may agree to accept something other than legal tender in payment of a debt; and if he makes a binding contract to accept such medium of payment, or if he actually accepts something other than legal tender in payment of a money debt, full effect is given to such payment." Page on the Law of Contracts, p. 4967.

In *Colorado Lumber Land & Improvement Co. v. Dustin*, 38 Colo. 398, 87 Pac. 1142, 120 Am. St. 126, it was held that one who had performed services under an oral executory agreement, whereby he was to receive land as part payment for his services, could not sue for services rendered and invoke the statute of frauds against the defendant, but, instead, the defendant could introduce evidence of the contract to show

that the plaintiff was not entitled to a money judgment.

The payment by the respondent debtor to a third person (Sipprell) by direction of appellant creditor of one hundred and twenty-five dollars monthly was a payment to the appellant creditor. The appellant rendered services under an unenforceable contract, receiving thereunder at the end of each month the agreed compensation of two hundred and seventy-five dollars, of which one hundred and fifty dollars was paid to the appellant in cash, and the remainder, at the request of the appellant, was paid to a third person (Sipprell) for stock purchased from such person by the appellant. Each monthly payment was, at the time, considered by appellant and respondent to be in full for services rendered during the month. It follows that the appellant cannot afterwards, although discharged before the expiration of the period fixed by the contract, recover any further sum for services rendered prior to the last payment.

An apt authority is *Cohen v. Stein,* 61 Wis. 508, 21 N. W. 514. The plaintiffs entered into a verbal contract of employment for a period longer than one year, hence void, with the defendants, for a compensation of fifty dollars weekly. The plaintiffs were discharged, whereupon they brought an action to recover the value of the services rendered, which they claimed were reasonably worth twenty-five hundred dollars. The court said:

"Under the decisions of this court there can be no doubt as to the correctness of the proposition that where a person renders services under a contract which is void, he can recover upon a *quantum meruit* the value of such services. (Citing cases). The rule rests on the strongest equity, compelling a party who has received a benefit from a part execution of a contract, which binds neither party, to make compensation for the benefit which he has received. As a matter of

course the defendants were at liberty to discharge the plaintiffs from their employment at any time, as the plaintiffs were at liberty to leave. The logic of the rule is, inasmuch as the contract has no legal validity, it is not admissible in evidence to determine the value of the services, but the servant recovers what he can show his services were reasonably worth."

Acting upon this idea, testimony was produced to show the value of the services of the plaintiffs. Plaintiffs testified they were paid the first six weeks for their work fifty dollars weekly, which was the full amount to which they were entitled, according to the contract, except the last week; that the fifty dollars was not paid for their services in full. The testimony of the defendants was to the effect that fifty dollars weekly was paid in full for the services rendered by the plaintiffs the preceding week. The trial court refused to give the defendants' requested instruction that

"If the jury find that the plaintiffs were paid $50 at the end of each week for their services during the week, and that such payments were at the time considered in full by both parties for the services rendered during such week, and that this was done down to the week ending May 26, 1883, then the plaintiffs can recover only for the services rendered after that date."

On appeal, it was held error to refuse to give the instruction, the court saying:

"It requires no argument to show if these weekly payments were intended by the parties when made to be in full compensation for the services rendered, that there can be no further recovery for services which have thus been paid for. . . . if the plaintiffs received $50 a week in full for the services which they had rendered, on what ground can they now claim additional compensation? Indisputably the parties could agree as to the value of the services. And if the jury were satisfied from the evidence that the weekly pay-

ments were at the time considered or understood by the parties to be in full for all services rendered during such week, then obviously the plaintiffs can only recover for services rendered after the last payment; for as to all preceding services full compensation had been made, which would include pay for all patterns and designs previously made. It may well be that the plaintiffs expected to continue their employment up to May, 1884. But, as defendants' counsel observes, that expectation was not founded on a valid contract. And if the plaintiffs at the end of each week received full pay for their services, that ends the matter as to the time covered by such payment. This view seems to be so obviously correct that it does not require further remark.''

That appellant did not receive stock to the value of forty-five hundred dollars from Sipprell is no concern of the respondent. The appellant received the amount to which he was entitled under the executed portion of the contract, being twelve and one-half shares, for which payment had been made from his salary by the respondent at appellant's request. While the respondent received the benefit of the services rendered by appellant, for those services it paid to the appellant a stipulated amount of cash and paid the remainder to a third party, by direction of the appellant, for shares of stock purchased by the appellant from such third party. The reasonable value of the services of the appellant to the respondent was two hundred and seventy-five dollars monthly, for which he has received payment in full.

The judgment is affirmed.

TOLMAN, C. J., BEELER, and BEALS, JJ., concur.