[No. 26695. Department Two. December 7, 1937.]

KARL P. HEIDEMAN, *as Administrator, Respondent,* v.
TALL'S TRAVEL SHOPS, INC., *Appellant.*[1]

*Eimon L. Wienir* and *Sam L. Levinson,* for appellant.

*Karl P. Heideman* and *Stewart N. Lombard,* for respondent.

GERAGHTY, J.—This action was brought by the plaintiff to recover damages for breach of a contract for life employment, alleged to have been made with the defendant.

It is alleged in the complaint that, in August, 1934, the defendant, in consideration of the plaintiff's leaving a job at which he was then employed and taking employment with the defendant, entered into an oral agreement with the plaintiff, by the terms of which he was to be given employment for the rest of his life at a wage of twenty dollars for a five-day week; that the plaintiff entered upon the performance of the contract and worked for the defendant until December 14, 1934,

[1]Reported in 73 P. (2d) 1323.

at which time the defendant informed him that there would be no work for two weeks and refused him employment during that period, although he was at all times ready, able, and willing to work for the defendant; that, on December 28, 1934, the plaintiff returned to the defendant's employ and remained until January 2, 1935, at which time the defendant discharged him without any fault on his part. From the time of his discharge to the commencement of the action, the plaintiff had been unable to obtain other employment. In his original complaint, the plaintiff asked for a judgment of $15,820, the amount of recovery sought being reduced by a trial amendment to $3,541.

After a demurrer to the complaint had been overruled, the defendant answered by a general denial, except as to the admission of the employment of the plaintiff from a date in August to December 14, 1934, and for two or three days subsequent to December 28, 1934.

After the denial of motions interposed by the defendant at the close of the plaintiff's case for a directed verdict, as well as at the close of all the testimony, the court submitted the case to the jury, which returned a verdict in favor of the plaintiff for $280. A motion for judgment notwithstanding the verdict having been denied, judgment was entered upon the verdict.

The defendant appeals.

Subsequent to the taking of the appeal, the respondent died, and an order was entered substituting the administrator of his estate as respondent. To avoid confusion, the plaintiff below will be referred to in our discussion as decedent.

The decedent had been employed by the Seattle Suitcase Company for several years prior to the time he entered the employ of the appellant. He testified

that, sometime during the summer of 1934, Mr. Tall, the president and principal stockholder of the appellant, called at his home and asked him to go to work for the appellant.

"I told him I had a steady job. Mr. Tall said, 'We will give you more wages.' I said to him, 'You work up a lot of cases and lay me off.' Mr. Tall said, 'No, we don't lay you off. You can work as long as you live.' He said in Jewish, 'Your whole life you can work.' The second time, he came to my store. Mr. Tall said, 'We have to have a mechanic. We have a factory and need you.' I told him, 'I don't know. I'll have to think it over.' Mr. Tall said, 'No, you have a life job.' The third time Mr. Harry Tall came to my home with his brother George, and the following conversation took place:

"Mr. Tall: 'Well, what have you decided? We have to have you.' Mr. Dubrovsky: 'I am working at my place steady and I don't know.' Mr. Tall: 'Well, we'll make you satisfied. We have lots of room. Good place. A new shop.' Mr. Dubrovsky: 'I will think it over.' . . .

"The following Saturday I go to his store. I told Mr. Tall, 'I am afraid you lay me off, I have a good job.' Mr. Tall and his brother George said, 'Well you come to work?' I said, 'I want to find out how much wages you give me.' Mr. Tall said, '$18.00'; and I said '$18.00 I don't want. I want $20.00.' Mr. Tall said, 'O. K., $20.00. You go ahead right away and bring your tools.' I said, 'O. K.,' and I go and bring my tools."

On cross-examination, he testified:

"Q. Did you ever tell Mr. Tall that you would work for the balance of your life for his company? A. That was never discussed. That never came up. Q. Did you tell Bill Thomas, on the Monday that you first went to work for Tall, that you would only work until Christmas time? A. Yes, I tell Bill Thomas, 'Don't be afraid. I'll only be here till Christmas.' But I didn't tell him how much wages I got. . . . Q. Did you tell Bill Thomas while you were employed at Tall's

that you were going to California after Christmas?  A.
Yes, I tell him I go to California, or whole United
States, after Christmas."

Asked about the execution of the agreement, he
said:

". . . I never asked Tall for a writing.  I got no
writing of any kind.  No, I never asked any officer of
the Board of Trustees for a contract.  I don't have to
ask.  I believe him.  I didn't ask Kotkins [of the
Seattle Suitcase Co.] either, and I worked for him for
nine years.  The only difference between my job at
Kotkins' and my job at Tall's is more money at Tall's."

It may be seriously questioned whether the dece-
dent's testimony, taken as a whole, tends to establish
more than assurance that he would have a steady job,
as that term is commonly understood; an employment
terminable at the will of either party.

While he testified that Tall said, "Your whole life
you can work," he told Bill Thomas, one of his fellow
employees at the Tall shop, that he intended to work
only until after Christmas, when he was going to
California.  He testified that the difference between
Tall's job and his former one at the Seattle Suitcase
Company, where he had been employed for nine years,
was the higher wages paid by Tall.

But if it be assumed that there was otherwise
evidence enough to submit the question of decedent's
life employment to the jury, the agreement would be
unenforceable for want of any consideration moving
to the appellant to support it other than the rendition
of service by the decedent.

In *Minter v. Tootle, Campbell Dry Goods Co.*, 187
Mo. App. 16, 173 S. W. 4, the plaintiff was employed
by the defendant for a term which he supposed to be
permanent.  Discharged some two years thereafter, he
brought an action to recover unpaid salary.  In order

to enter into the defendant's employ, the plaintiff gave up another employment. The court said:

"The reported cases which deal with contracts of employment in commercial business, where no other consideration than a promise to perform the service passes from the employee to the employer, are almost unanimous in applying the general rule that the words permanent, lasting, constant, or steady, applied to the term of employment do not constitute a contract of employment for life, or for any definite period, and such contracts fall under the rule 'that an indefinite hiring at so much per day, or per month, or per year, is a hiring at will and may be terminated by either party at any time, and no action can be sustained in such case for a wrongful discharge.' . . .

"The general rule that the assurance of permanent employment will be construed as meaning an indefinite, as distinguished from a special, or merely temporary employment, is a common sense inference founded upon common knowledge of the customs and usages of business. The effort of plaintiff to show an additional consideration passing from him to defendant was abortive since it shows that he merely abandoned other activities and interests to enter into the service of defendant—a thing almost every desirable servant does upon entering a new service, but which, of course, cannot be regarded as constituting any additional consideration to the master."

In *Heaman v. Rowell Co.*, 261 N. Y. 229, 185 N. E. 83, it is said:

"That a contract for employment for life if authorized by the corporation and based on an adequate consideration, will ordinarily be sustained admits of no dispute. (*Riefkin v. DuPont DeNemours & Co.*, 290 Fed. Rep. 286; *Arentz v. Morse Dry Dock & Repair Co.*, 249 N. Y. 439, 444.) Alleged contracts of life employment are, however, so unusual as to have been, with rare exceptions, condemned by the courts as unreasonable and unauthorized."

See, also, *Rape v. Mobile & O. R. Co.*, 136 Miss. 38, 100 So. 585, 35 A. L. R. 1422, with editorial note; and

*Arentz v. Morse Dry Dock & Repair Co.*, 249 N. Y. 439, 164 N. E. 342, 62 A. L. R. 231, and note.

Most of the cases upholding contracts for permanent or life employment have arisen where railway employees, injured in the service of their employers, had waived claims for damages in consideration for the promise of employment. *Brighton v. Lake Shore & M. S. R. Co.*, 103 Mich. 420, 61 N. W. 550; *Stearns v. Lake Shore & M. S. R. Co.*, 112 Mich. 651, 71 N. W. 148; *Texas Cent. R. Co. v. Eldredge*, 155 S. W. (Tex. Civ. App.) 1010.

The case of *Carnig v. Carr*, 167 Mass. 544, 46 N. E. 117, 57 Am. St. 488, 35 L. R. A. 512, is sometimes cited in support of the view that the rendition of service, coupled with the giving up of another employment, constitutes a consideration for permanent or life employment. But in that case the plaintiff was a competitor of the defendant and gave up a business and sold his stock in trade to the defendant, who agreed, in turn, to give the plaintiff permanent employment at a stated salary; the defendant thereby getting rid of his competition in business. As said in *Skagerberg v. Blandin Paper Co.*, 197 Minn. 291, 266 N. W. 872, "The resulting situation amounted to the same thing in substance and effect as if plaintiff had purchased his job."

The appellant also contends that the contract of employment was void, because not authorized by its directors. The testimony shows that all the stock of the appellant is owned by Harry Tall and one or more of his brothers, who were engaged with him in conducting the business. These brothers were present with Tall during part of the negotiations, at least, and it may reasonably be inferred from the record that all of the directors concurred in the employment.

But, as we held in *Llewellyn v. Aberdeen Brewing Co.,* 65 Wash. 319, 118 Pac. 30, Ann. Cas. 1913B, 667, under the provisions of Rem. Rev. Stat., § 3809 [P. C. § 4515], the trustees themselves could not authorize a contract for a definite period. This rule was adhered to in *O'Donnell v. Sipprell, Inc.,* 163 Wash. 369, 1 P. (2d) 322, 76 A. L. R. 1405, where we held, however, that although a corporation could remove an employee, notwithstanding his employment for a definite period, without incurring liability for the unearned portion of the salary contracted for, yet the employee was entitled to recover on *quantum meruit* for services actually rendered.

Whether or not the rule announced in those cases is affected by the uniform business corporation act, chapter 185 of the 1933 Session Laws, p. 770, Rem. Rev. Stat. (Sup.), § 3803-1 [P. C. § 4592-31] *et seq.,* it is unnecessary for us to decide here, since the judgment must be reversed on other grounds.

The cause is returned to the superior court, with direction to dismiss.

STEINERT, C. J., BEALS, MILLARD, and ROBINSON, JJ., concur.