[No. 27745. Department Two. April 10, 1940.]

E. A. GENSMAN, *Respondent and Cross-appellant,* v. WEST COAST POWER COMPANY, *Appellant.*[1]

[1]Reported in 101 P. (2d) 316.

*Clifford & Campbell* and *Fred M. Bond,* for appellant.

*V. D. Bradeson* and *Welsh & Welsh,* for respondent and cross-appellant.

GERAGHTY, J.—This action was brought by the plaintiff to recover damages for breach of an oral agreement for continuous or life-time employment, alleged to have been made with him by the West Coast Power Company, defendant, and also to recover wages for overtime, alleged to be due under an oral agreement.

Certain preliminary facts may be taken as undisputed. The Ilwaco Light and Power Company installed an electric light plant at Ilwaco in 1921. The plaintiff was employed in its installation, and, after completion, continued as plant engineer for the company. He remained in this employment until his discharge by the defendant in November, 1937. Throughout the period of his employment, he worked under direction of Clyde A. Woodham, who was, first, president and, later, manager of the company, with authority to hire and discharge men regularly employed in the plant.

At first, the plaintiff was assisted in the plant by two other men. He was paid $125 a month and the two men assisting him $100 or $110 a month each. In 1924, the plant force was reduced to two men, the plaintiff and his son. The plaintiff's salary was increased to $200 a month, and the son was paid $150, that is to

say, the father and the son were paid approximately what had theretofore been paid to the three men. The plaintiff had authority to employ extra help when needed on special occasions. While Woodham was manager, M. V. Watson seems to have been an executive officer of the company, with some general authority over its operations.

In August, 1926, the Ilwaco plant was purchased by the Peoples West Coast Hydro-electric Corporation; the name of this corporation was later changed to the West Coast Power Company. Woodham and Watson continued with the new owner and had the same relation to its management as before the purchase. Watson died shortly after the institution of the present action and before the trial.

After the 1929 depression, the plaintiff's monthly salary was reduced to $170, in accordance with a general reduction of fifteen per cent made in the salaries and wages of the company's officers and employees; later, in 1933, his salary was increased to $180 and continued at this rate until his discharge. At the time of his discharge, his age was a little short of seventy-two years.

In the complaint, it is alleged that, after plaintiff had been engaged in unloading heavy machinery from barges on the Columbia river and installing it in the plant, he complained of the excessive hours of employment required of him and told his employer that, unless additional help was supplied, he would give up his job and quit. The supervising official of the company informed him that, if he would continue his services and do all that was asked of him and serve long hours at his labor and not quit his job, but continue in the West Coast Power Company's employment, that company would always take care of him and see that he would have "continued and perpetual

employment" with it as long as he desired it; that thereupon,

" . . . in consideration of the representation of an authorized agent of the defendant as having been made in good faith, this plaintiff did then and there, and has ever since such time, up to the 31st day of November, 1937, accepted such promise and has worked exceedingly long hours without proper sleep or rest and in reliance upon such representation that plaintiff would be later relieved thereof and paid for such excessive hours and also have perpetual employment during his ever advancing years."

With respect to the agreement for pay for extra time, it is alleged that, on many occasions since the year 1926, the officers and agents of the defendant represented, and led the plaintiff to believe, that a third operator would be employed at the electric plant, so that each operator would work but eight hours daily; and that, in so far as plaintiff should work in excess of eight hours, the defendant company would make it right and see that he had perpetual employment, and he had continued the employment and refrained from quitting and from pressing his claim for overtime in consideration of such promises of the defendant.

In its answer, the defendant admitted the employment of the plaintiff subsequent to August 2, 1926, and that, on certain occasions subsequent to that date, plaintiff requested extra help, which was given to him.

By way of affirmative defense, it is alleged that the plaintiff had been fully paid for all services rendered by him; that, if any promise, agreement, or contract had been entered into between the plaintiff and the defendant pertaining to labor or services, the existence of which is denied, such contract was void under the terms of Rem. Rev. Stat., § 3809 [P. C. § 4515], having

relation to the employment by corporations of their officers and employees; and that, if any contract was made, it was void under the statute of frauds as not having been made in writing. The statute of limitations was also pleaded as a bar to any claim for overtime beyond the period of three years from the date of the institution of the action.

Plaintiff filed a reply denying the affirmative matter contained in the answer.

After trial of the cause to the court, sitting without a jury, the following findings of fact were made:

"I. The court finds that the plaintiff has not sustained the burden of proving a contract for life-time employment between the plaintiff and defendant.

"II. The court finds that the plaintiff has not sustained the burden of proving damages due the plaintiff for the alleged breach of contract for life employment.

"III. The court finds that the plaintiff was originally employed with two other men to work twenty-four hours a day or eight hours each per day, for a monthly wage.

"IV. That the defendant is obliged to pay the plaintiff for all overtime in excess of eight hours per day at the rate of seventy-five cents an hour.

"V. The court finds that the three-year statute of limitations is applicable to all of claimant's demands existing more than three years prior to the commencement of this action.

"VI. The court finds that with the three years from the commencement of this action, the plaintiff had rendered services to the defendant in the amount of 3252 hours for the reasonable sum of seventy-five cents an hour, or a total amount of $2,439.

"VII. The court finds that the defendant has not sustained the burden of proof of its affirmative defenses.

"VIII. The court finds that there is due and owing from the defendant to the plaintiff exclusive of any counter-claim or set-off, the sum of $2,439, which sum is unpaid."

Appropriate conclusions of law were made upon these findings, and judgment was entered in favor of the plaintiff for the amount found to be due him. The defendant appeals from the judgment, and the plaintiff cross-appeals in so far as the judgment is adverse to his claim for damages for breach of the alleged contract of life employment and applies the three-year statute of limitations [Rem. Rev. Stat., § 159, subd. 3] to his claim for overtime. The plaintiff, although he has cross-appealed, will be referred to simply as respondent, and the defendant as appellant.

The issues raised by the assignments of the parties are three: (1) The correctness of the finding that the respondent did not sustain the burden of proving a contract for permanent or lifetime employment; (2) the correctness of the finding that the respondent had worked overtime, for which he was entitled to compensation from the appellant; and (3) whether the three-year statute of limitations applies to toll any recovery beyond that period, assuming that his evidence established that he had rendered overtime service under an agreement entitling him to compensation in addition to his monthly salary.

The witnesses supporting the respondent's claim were himself, his wife, and son. The conversations forming the basis for his claim of an agreement with the corporation for lifetime employment were had with M. V. Watson, who visited the Ilwaco plant some three or four times a year. While Mr. Woodham was district manager for the appellant and had immediate charge of the company's operations at Ilwaco and the hiring and discharging of employees, the respondent did not testify to any agreement had with him touching this question. The respondent testified:

"Q. What can you say about continued employment or any promise if any was ever made, was any such a

thing made to you? A. Yes sir there was. Q. Who made that promise to you if any one? A. Mr. V. W. Watson. Q. Who was Mr. V. W. Watson? A. President of the company as I understand. . . . Q. Where did he make this statement to you? A. Oh he made that statement out at the hotel. Q. You say he made it at the hotel, what hotel? A. Seaview Hotel. Q. Who was present if anyone when he made that statement? A. Well my wife was present for one, I don't know, there was some other guests there, I dont remember; I did not set down exactly what they said. Q. What did he tell you as near as you can give it? A. Well we complained about so much overtime and he said I would have a job there as long as we own the plant, or as long as we wanted to work, that they were trying to make the work lighter for us and after a while when they got things straightened out there would not be much work. . . . Q. Do you remember what year that was? A. That occurred several times I dont remember just exactly the date, I never set it down the very date but prior to that he told me that, he also told me one time in the presence of my son when we were moving a big engine from the scow. Q. Was that Mr. Watson or was it Woodham? A. Watson."

Anna Gensman, the respondent's wife, testified to a conversation with Watson in 1927 in relation to her husband's employment:

"Well as he sat there of course as I said I was complaining about Mr. Gensman coming home so tired and working so long and so many hours. He said, he knew he was working hard, but, he said, Mrs. Gensman, we have agreed and we will pay him for his overtime, and he said, more than that he will have a job as long as he wants it, because, he said, the work will become lighter; this plant in time will only become a stand-by."

Robert L. Gensman, respondent's son, testifying to a conversation between his father and Watson, said:

"My father and myself, he told us, he said: All your time will be paid for, dont worry about that Mr. Gens-

man, or Dad, he said every hour you work will be paid by the company and you will have a job as long as you want it, . . . He said that not once but more. My father and I once had a conversation with him at the hotel after I got off in the afternoon, . . . He reiterated again practically the same statement he made previous, he knew it was terrible but if we would go on and do the best we could we would get our money for every hour we worked and we would not have to worry for a job, those were literally the words he used."

Clyde A. Woodham testified that he was manager for the appellant for the lower Columbia district embracing Pacific and Wahkiakum counties. He had been president of the Ilwaco Power and Light Company prior to 1922, and was thereafter manager until appellant's acquisition of the property in 1926. He had never heard of any agreement for life employment of the respondent, nor of any agreement for payment of overtime. The respondent's services with the company were terminated the latter part of 1937, because there was no further use for the power plant. A transmission line had been built from Westport, Oregon, to Ilwaco, over which the appellant received power sufficient to supply its customers. He testified that the appellant kept an employee at the plant after respondent's discharge, but his time was spent in doing work different from that for which the respondent had been employed, such as converting and testing meters, helping on construction work when extra help was necessary, and repairing appliances; his work at the plant, which was then used as a stand-by only, was very limited. The respondent made no complaint when his services were terminated. Woodham denied that he was ever present at any time when a promise was made by Mr. Watson, or anyone else representing his

company, to the respondent that he was to have a life-time job.

■ On the issue of respondent's life employment, we are clear that the court's finding should be sustained. Accepting the respondent's evidence at face value, the assurance given by Watson meant no more than that there would be a steady job for him so long as con-, ditions were mutually satisfactory and there was work for him to do. *Heideman v. Tall's Travel Shops,* 192 Wash. 513, 73 P. (2d) 1323.

In the annotation to *Rape v. Mobile & O. R. Co.,* 136 Miss. 38, 100 So. 585, found in 35 A. L. R. 1422, 1432, it is said: ·

"In most of the jurisdictions passing on the duration of a contract purporting to be for permanent employment, it is held that, in the absence of additional express or implied stipulation as to the duration of the employment or of a good consideration additional to the services contracted to be rendered, a contract for permanent employment, for life employment, for as long as the employee chooses, or for other terms purporting permanent employment, is no more than an indefinite general hiring terminable at the will of either party."

■■ On the question of the respondent's claim for overtime, the evidence was conflicting. In the testimony of respondent, his wife, and son, already quoted, reference is made to Watson's promise of payment for overtime. The respondent testified to repeated conversations in which he was assured by Woodham also that he would be paid for all overtime worked by him.

Woodham denied that any such conversations were had or promises made. He further testified that, when the services of a third man were dispensed with, the father and son agreed to do all of the work required at the plant, each taking a twelve-hour shift, for which

they were to be paid a sum equal to what the three men had theretofore received.

Respondent made a daily written report of the hours worked at the plant. These reports, on printed slips supplied by the appellant, had columns for showing the number of hours worked and the rate of pay, and a column for general office distribution. Respondent generally reported working twelve hours a day, although sometimes reporting longer hours, and his rate of pay was stated as the monthly salary he was receiving. He segregated the hours spent in general plant operation and in making repairs. Woodham testified that the report of the hours worked and their segregation was required to enable the appellant to conform its accounting to the rules and regulations of the public service department of the state.

We have followed the rule that, where the testimony is in conflict, the findings of the trial court will not be disturbed unless we are satisfied that the evidence preponderates against them. On the disputed issue of fact here, we cannot say that the weight of the evidence preponderates against the court's finding.

■ The respondent contends that the court erred in applying the three-year statute of limitations to his claim for overtime and cites authorities to the effect that, where services are rendered under an agreement which does not fix any certain time for payment, nor when the services shall end, the contract of employment will be treated as continuous, and the statute of limitations will not run until such services are ended. Among the cases cited are the following from this jurisdiction: *Ah How v. Furth,* 13 Wash. 550, 43 Pac. 639; *Morrissey v. Faucett,* 28 Wash. 52, 68 Pac. 352; *Sibley v. Stetson & Post Lumber Co.,* 110 Wash. 204, 188 Pac. 389; and *Perry v. Hillman,* 153 Wash. 689, 280 Pac. 346.

The cases cited by respondent are not controlling in the circumstances disclosed by the record here. In *Sullivan v. Pacific Finance Corp.*, 192 Wash. 70, 72 P. (2d) 590, the court held the three-year statute to be applicable under facts quite similar in principle to those present here.

In that case, the respondent was discharged by the appellant after having been employed as a clerk and stenographer for four years. Her claim for overtime was based upon an oral contract which she said she had made with the manager of the appellant. She testified that she had a discussion with him as to overtime and was told by him that, while overtime was not favored, if she worked overtime she was to be paid for it on the regular basis, which would amount to fifty or fifty-five cents an hour. The employer denied the agreement, and the issue of fact was submitted to the jury under an instruction reciting that, if the jury found from a fair preponderance of the evidence that the agreement claimed to have been made by the respondent was, in fact, entered into, and she had performed overtime services under the agreement,

" '. . . then she would be entitled to a verdict against the defendant representing the amount of overtime you may find that she worked in the service of the company at the rate of fifty-five cents per hour'."

The appellant assigned error on the quoted passage of the instruction for the reason that it did not limit the amount of overtime for which the respondent could recover to a period within three years prior to the time the action was instituted. Passing upon the assignment, the court said:

"The instruction, of course, is too broad, as the first four months of the overtime claimed was for a period of more than three years prior. However, the evidence went in without objection. The appellant did not

request the court to limit recovery, if the jury found for the respondent, to a period within the statute of limitations. The verdict was only for a little more than one-half the amount that the respondent was claiming. In view of the situation thus presented, we think the appellant is not now entitled to claim that it was prejudiced by the giving of the instruction."

In the present case, whatever may have been the measure of compensation for the services rendered by respondent, whether a straight monthly salary, as contended by the appellant, or the salary with additional pay for overtime, as contended by him, the total amount earned was payable every month. We think the court correctly applied the three-year statute.

The judgment of the trial court is affirmed.

BLAKE, C. J., BEALS, and JEFFERS, JJ., concur.

STEINERT, J. (concurring in part and dissenting in part)—I concur with the majority in affirming the judgment on *plaintiff's* cross-appeal relating to the matter of lifetime employment. I dissent, however, from that portion of the opinion affirming the judgment on *defendant's* appeal relating to wages for alleged overtime. In my opinion, the evidence preponderates against the findings of the court upon the latter issue.

Plaintiff's claim, it seems to me, is preposterous under the facts appearing in the majority opinion. Defendant in 1924 was employing three men, including plaintiff, to work in eight-hour shifts and was paying them a total monthly wage of $335. It discharged one of the men and retained the other two, including plaintiff, to do exactly the same work, which, of course, required them to work in twelve-hour shifts, but for which defendant agreed to pay, and did pay, a total wage of $350 per month. In other words, defendant paid a greater total wage to two men than it had formerly paid to

three for the same work. Plaintiff's former wage was, under the agreement, raised from $125 to $200 a month. After regularly accepting the agreed increased wage, for the increased amount of work, for over eleven years, plaintiff now comes forward with the claim that, in addition to his stipulated increase of pay, he was also to be paid for all overtime in excess of eight hours per day, which the court fixed at seventy-five cents per hour; and, in addition, plaintiff claims that, under the agreement, he was to be employed for the remainder of his natural life.

The court did not accept his story with reference to lifetime employment, and I am convinced from the record that his claim with reference to overtime pay is even less credible. It is unreasonable to think that a man would for eleven years forego collection or demand of wages that rightfully belonged to him and, in the meantime, run the hazard of loss through insolvency of his employer or take the risk not only of the statute of limitations, but also of the likelihood that his own death might jeopardize ultimate collection of the balance owing him.

I am unable to give credence to such a claim, and therefore dissent.