UNITED PRODUCERS AND CONSUM-
ERS CO–OPERATIVE, a Corporation,
and Southwest Co-Operative Wholesale,
a Corporation, Appellants,

v.

Ralph W. HELD, Appellee.

No. 14400.

United States Court of Appeals
Ninth Circuit.

Aug. 22, 1955.

Scoville & Linton, Phoenix, Ariz., for appellants.

Jennings, Strouss, Salmon & Trask, O. M. Trask, Phoenix, Ariz., for appellee.

Before HEALY, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

The two Arizona corporate appellants here involved are, for operating purposes, almost identical. Southwest Co-Operative Wholesale (hereafter Southwest) is a wholesale company whose principal customer is United Producers and Consumers Co-Operative (hereafter United). United is a retail organization composed of, and sells to, several thousand members. The personnel operating the two corporations are the same; the locations of their offices are the same; several of the incorporators of each are the same; and several of the officers and directors, including the President and Auditor are the same.

In December, 1951 the two corporations were in need of a general manager. One of the directors wrote a letter to appellee in Des Moines, Iowa, where he was a co-operative executive, seeking to find a manager for the two appellant corporations. In January, 1952 the same director arranged a meeting in Chicago between the appellee and Walter Smith, president of both corporations, and Lewis Walmsley, auditor of both appellant corporations. At the meeting, the appellants' representatives offered to pay the expenses of the appellee if he would go to Phoenix and look over the two corporations with an eye toward becoming their general manager. The appellee accepted this offer and spent two days in Phoenix inspecting the corporations and being entertained by members of the appellant corporations. Appellee informed the president of the two corporations that he was not interested in any offer to become manager and returned to his position in Des Moines.

In February, Smith, president of both corporations, telephoned appellee in Des Moines and told him that they were definitely interested in making him a proposition. Appellee replied that he was almost committed to a position in St. Louis and didn't believe he would be interested. Two days later Smith called again and strongly requested appellee to again come to Phoenix at the expense of the two corporations and take a second look at their proposition. Appellee answered appellants' request and flew to Phoenix in early March. Appellee was again shown through the corporate operations and dined with several directors.

On March 6, 1952, the board of directors of *both* corporations met jointly and interviewed appellee about becoming their general manager. There is testimony that during this meeting appellee told the joint board of directors that he would not consider employment for less than a three year term.

Following the interview, appellee was excused and the joint boards of directors then held a special closed meeting where these boards discussed the offer they would make to appellee. An original incorporator, officer and director who was present at the meeting testified that the joint boards authorized an offer of up to $10,000 a year plus 5% of the net; discussed the three year term appellee had requested, and that there was no objection to this "term" by any member of the boards. Both boards unanimously passed an identical resolution authorizing Smith, the president of both corporations *and* Walmsley, the auditor of both corporations to employ appellee as general manager of both corporations and work out the terms of employment. Smith came out of the meeting and told appellee that both boards had given him authority to employ appellee. Smith arranged a dinner engagement for appellee and Walmsley on the same evening, during which the employment terms were discussed.

The following afternoon a written contract was dictated by Smith and appellee. Smith signed two copies of the contract as president of the two corporations and gave them to appellee who said he would further consider this offer and the St. Louis offer and let Smith know his decision.

On March 20, 1952, Smith again telephoned appellee who was then in Des Moines, Iowa to learn whether appellee had reached a decision. Appellee advised Smith he would accept and would place the signed contract in the mail,

which he did. Smith died suddenly on March 25, 1952 which was the day the signed contract arrived. The contract was for a three year term of employment at a salary of $10,000 a year plus two per cent of the net income of the corporations for the second and third years of the agreement. Appellee went to Phoenix and assumed management of both corporations on April 1, 1952.

On May 27, 1952 appellee was informed by the man who succeeded Smith as president that *the legality* of his contract was questioned and he was notified that the contract was terminated on June 20, 1952. This action followed and appellee was given judgment in the lower court for the amount owing him under the three year contract minus "mitigating income" earned during the period of the contract.

On this appeal the major contention of both appellant corporations is that the *by-laws* of both prohibit employment of a manager for a definite period. The by-laws of both provide that the manager " * * * shall hold office at the pleasure of and upon terms and conditions fixed by the Board of Directors." In support of this contention, appellants cite stale authority from the late nineteenth and early twentieth century. For example, appellants discuss Llewellyn v. Aberdeen Brewing Co., 1911, 65 Wash. 319, 118 P. 30, and Darrah v. Wheeling Ice & Storage Co., 1901, 50 W.Va. 417, 40 S.E. 373 which are cases dealing with state statutes which are not present in the case at bar. Furthermore, the law has for years been changed in both of these States and to the extent that it is authority, it is clearly contrary to appellants' contentions. See Hansen v. Columbia Breweries, Inc., 1942, 12 Wash.2d 554, 122 P.2d 489; W.Va.Code Ann.1923 C. 53 § 53 (the basis for the cases from that State relied upon by appellants which was deleted in the revision of 1931, W. Va.Code Ann.1932, § 3030).

Appellants cite Douglass v. Merchants' Ins. Co., 1890, 118 N.Y. 484, 23 N.E. 806, 7 L.R.A. 822, but we do not believe that this old New York case supports appellants' contentions. A subsequent New York case in point adequately distinguishes the old and misleading citation of appellants. In Cuppy v. Stollwerck Bros., 1916, 216 N.Y. 591, 111 N.E. 249, 251 a managing director was hired for a period of one year and after four months the board of directors attempted to terminate his contract pursuant to a *by-law* known to the plaintiff. The court there quoted the statute and commented as follows:

"'The Board of Directors by a majority vote may at any regular or special meeting remove a director or officer and by like vote fill the vacancy so created.' * * * While the by-law empowered the board of directors to remove a director or officer, it did not authorize them to terminate a contract with one whom they had employed for a definite term. * * * Douglass v. Merchant's Ins. Co., 118 N.Y. 484, 23 N.E. 806, 7 L.R.A. 822, upon which the respondent relies, is plainly distinguishable from this case. In that case one who acted as the secretary of the corporation at an annual salary was not employed for a definite term, and the decision in that case turned upon that fact. Indeed, in Judge Bradley's opinion in that case, it is pointed out that in cases where the employé had been employed under a special contract it has been held that the corporation loses its general power of removal. [Citations.]"

A subsequent New York case which arose in the federal courts is directly in point, In re Paramount Publix Corporation, 2 Cir., 90 F.2d 441, 442, 443. The court construed Section 60 of the New York Stock Corporation Law, McK.Consol.Laws, c. 59 which reads in part as follows: "' * * * *The directors* may require any such officer, agent or employee to give security for the faithful performance of his duties, and *may remove him at pleasure.*'" (Emphasis added.) The court added:

" * * * the sole question is whether the last sentence exempts the corporation from liability for discharging him without cause during the term of his contract of employment. The appellant contends that the District Court erred in answering that question in the negative.

"The consequences of accepting the opposite view are startling. It would mean that no New York stock corporation could make a binding contract of employment for a definite term; all officers, agents and employees would be dischargeable at will without liability on the part of the corporation, and it would follow that any of them could leave at will without incurring liability on their part, no matter how essential their services might be to the interests of the corporation. The announcement of such a doctrine would certainly cause surprise and consternation to the business world * * *."

Appellants further contend that, "The general rule preventing the employment of a manager for a fixed term in violation of *a corporate by-law* is expressed in the following quotation from 14a C.J. 428 § 2279:

" * * * nor can they [directors] employ a general manager for a fixed period, for example by the year, *under by-laws* which hold that all officers of the corporation shall hold office during the pleasure of the board of directors." (Emphasis added.) See also 19 C.J.S., Corporations, § 1048.

We note that the "rule" stated in the newer Corpus Juris Secundum, 19 C.J.S., Corporations, p. 72 is just the opposite of the older rule cited by appellants. The present rule is there said to be:

"An agent employed under a contract fixing no stated term of employment may be removed even in the absence of any by-law so providing; but a corporation cannot, without cause, discharge or remove an agent in violation of a contract under which he is employed for a definite period without becoming liable for damages, despite a statute *or by-law* permitting the removal of agents at the pleasure of the board." 19 C.J.S., p. 72. (Emphasis added.)

■■ We do not believe that *the by-laws* upon which both appellants rely permit them to discharge an officer or employee without cause when he has been hired for a definite period or term without becoming liable for damages. We think that on the evidence the lower court could have found and concluded, as he did, that the contract was legally valid and enforceable and that appellants wrongfully terminated the instant contract without justification.[1]

1. The lower court found, in pertinent part, as follows:

III

"That said contract was executed on behalf of the defendants by W. L. Smith, President of each of the defendants, who had been authorized by the Boards of Directors of each of the defendant corporations to negotiate and enter into said contract on behalf of the said defendant corporations.

IV

"That the term of the contract was a reasonable term in view of the terms of office of the several boards of directors and the established practice of continuing said directors in office; * * *

V

"Under the evidence the approval of Lewis G. Walmsley was not required to authorize or validate said contract * *

VI

" * * * the plaintiff entered upon the performance of his duties as manager pursuant to the terms of the contract, and at all times thereafter complied with all of the terms thereof up to and including the date upon which the contract was terminated by the action of the two defendant corporations; * * *

VII

"That on or about June 20, 1952, the defendant corporations and each of them, discharged the plaintiff and cancelled his contract and notified the plaintiff that his services were terminated; that said action on the part of each of the defendant corporations was wrongful and without justification."

Appellants further argue that even if either or both corporations had the power to hire appellee for a definite term, nonetheless the three year term of the contract which they negotiated was void and unenforceable because it was beyond the term of the boards of directors which made the contract. We do not agree.

We believe that the contract period here involved was reasonable—particularly when one considers this contract period against the background facts of this case. The Supreme Court of Arizona has not passed upon this question; but when considering a different matter in the case here noted, it did (arguably) make a statement which could be construed to indicate some approval for the proposition that a contract of employment for a period of ten years is unreasonably long if the board of directors are elected for three year terms. However, we do not believe that the Arizona Supreme Court expressed approval of such a proposition, even by way of dictum. In Tucson Federal Sav. & Loan Ass'n v. Aetna Inv. Corp., 74 Ariz. 163, 245 P.2d 423 that court was faced with a challenge to the legality of a ten year contract between two corporations. One (a savings and loan concern) desired the protection of insurance on property on which it had made loans. The other (an insurance company) had contracted to sell this sort of insurance to the savings and loan concern. The suit was based on the charge that the loan company had breached the contract by refusing to longer buy such insurance.

The Arizona court upheld the contract and distinguished the cases cited from other jurisdictions relied on by appellant in that case *because* these cases dealt with *employment contracts* which extended beyond the period of the corporate directors' terms. The court refused to apply the rule of the cited cases (which dealt with contracts for personal labor and service) to a contract *to buy and sell insurance*. Having distinguished the cited employment contract cases the court said: "These cases limit the application of the rule to employment contracts, which we believe is sound." Tucson Federal Sav. & Loan Ass'n v. Aetna Inv. Corp., supra, 245 P.2d at page 427.

Appellants in the case at bar would have us say that this ambiguous sentence necessarily means that an employment service contract is invalid *if* it exceeds the term of the board of directors. This issue was not raised in Tucson Federal Sav. & Loan Ass'n, supra.

Arizona has neither statute nor case law prohibiting employment contracts which extend beyond the term of office of the existing board of directors. We do not think that the Arizona cases brought to our attention lend support to appellants' contention. All of these Arizona cases involved contracts between a municipal corporation and private individuals. Town of Tempe v. Corbell, 1915, 17 Ariz. 1, 147 P. 745, L.R.A.1915E, 581; Olmstead & Gillelen v. Hesla, 1922, 24 Ariz. 546, 211 P. 589; Pima County v. Grossetta, 1939, 54 Ariz. 530, 97 P.2d 538. There is no indication in these cases that the rule therein discussed would be applied to contracts of employment between private corporations or associations and private individuals, corporations or associations.

In considering a five year employment contract, the Federal Court of Appeals for the Third Circuit said:

Based on such findings the court concluded:

I

"That the contract between plaintiff and the defendants dated March 22, 1952, was a legally valid and enforceable contract.

II

"That the plaintiff at all times prior to the wrongful termination of said contract satisfactorily performed the terms thereof.

III

"That said contract was terminated by the defendants wrongfully and without justification on or about June 20, 1952, which termination constituted an actionable breach of the contract by said defendants."

"Nor was the contract one against public policy. It was not tainted with fraud. The restraint thereby placed upon the future freedom of action of defendant's board of directors cannot be said to have been in fact or principle injurious to the public interest. The term of office therein fixed was neither permanent, unlimited nor for life, but, in view of plaintiff's relation to defendant and his familiarity and grasp of its business, was for a reasonable period only. *The contract was in conflict with no statute.* * * * "
Realty Acceptance Corp. v. Montgomery, 51 F.2d 636, 639. (Emphasis added.)

Appellants cite the outmoded Washington case of O'Donnell v. James E. Sipprell, 1931, 163 Wash. 369, 1 P.2d 322, 76 A.L.R. 1405 which interprets an old statute. We note that this rule has been changed in that State. See Hansen v. Columbia Breweries, Inc., supra, 122 P.2d at page 491, to the effect that:

" * * * After entering into contracts of employment for a fixed period of time, corporations must be held liable in damages for the violation of such contract.

"The argument that the employment of agents or employees for a term of years deprives succeeding trustees of the power of removal and perpetuates a business policy is not persuasive. We are unable to see that the construction of the statute in a manner that permits the board of trustees to bind a corporation for a fixed term by employing individuals for a definite time handicaps the succeeding board any more than does the admitted power to bind the corporation by long term leases or other kinds of contracts extending over a long period of years."

Almost identical language to that in the above quote was used by the Court of Appeals for the Second Circuit in rejecting an argument such as appellants make here. In re Paramount Publix Corporation, 90 F.2d 441, 444.

The members of the boards of the appellant corporations were elected for staggered three year terms. The contract made with appellee was for a period of three years. We find no sound reason to repudiate the conclusion that the contract in the case at bar was made for a reasonable time and is therefore valid.

■ Appellants contend that the lower court was wrong in finding that Smith, president of both corporations had *authority* to enter into the contract with appellee for the corporations. They argue that since *both* Smith and Walmsley had been authorized to work out the terms of employment and employ appellee, the contract must fail because Walmsley was not present when the contract was written or signed. The record indicates that Walmsley did meet with appellee the night before the contract was signed to *discuss* the terms of the contract. However, there was no requirement in the resolutions that Walmsley actually sign the contract. We are convinced that Smith had *actual authority* to employ appellee hence we do not reach the other persuasive arguments of appellee that Smith also had *apparent authority* or that the board of directors *ratified* the contract.

■ Appellants further assign as error the meaning given by the lower court to the term "net income" in the contract of employment (this apparently in his finding dealing with the specific items comprising the damages sustained by appellee). They urge that in the parlance of cooperatives this term has a special meaning which is much more restricted than is the normal meaning usually attributed to this language. The meaning of this term was a question of fact for the court. Although the testimony was not wholly in harmony with respect to the meaning of this term, we cannot say that the finding of the lower court dealing with the items of damages was clearly erroneous.

The judgment of the lower court is affirmed.